[No. 17105-1-III. Division Three. December 23, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. AIDAN MATHEW GUZMAN, *Appellant*.

*Hugh M. Spall, Jr.*, for appellant.
*Jeffrey C. Sullivan, Prosecuting Attorney*, and *Lauri M. Boyd, Deputy*, for respondent.

BROWN, J. — Aidan Mathew Guzman's jury found him guilty as an accomplice to murder in the first degree by extreme indifference, two counts of first degree assault and one count of second degree assault as the driver in a drive-by shooting. He argues on appeal that the instructions improperly summarized accomplice liability because he was not the shooter. Sentencing error is conceded under *In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 955 P.2d 798 (1998). We decide the accomplice liability instructions are proper statements of the law. We affirm and remand for resentencing.

## FACTS

In May 1997, Mr. Guzman drove a car in a drive-by shooting accomplished by his passenger, Margarito Patricio Madera. Jose Cuevas, part of a small group, was shot and killed. Mr. Guzman and Mr. Madera had been "cruising" up and down 6th Street in Sunnyside. Earlier, Mr. Madera drove the vehicle that belonged to him, and Mr. Guzman rode in the front passenger seat. Their friend, Camilio Valencia, rode in the back seat.

Earlier in the evening, Jose Cuevas and his brother-in-law, Sergio Trujillo, were also cruising 6th Street in Jose's car when a quarrel occurred with the occupants of the Madera car. Mr. Cuevas, Mr. Trujillo, Martin Torres, and Antonio Torres later encountered a friend, Juan Trujillo, and asked him to "back em up." Eventually, the Cuevas

group gathered at Speedy Auto Glass on 6th Street to talk and watch cars go by.

Mr. Madera drove by the Cuevas group with Mr. Guzman in the front passenger seat and Mr. Valencia in the back seat. Mr. Guzman and Mr. Valencia testified that as they were driving by, David Trujillo and Jose Cuevas walked toward Mr. Madera's car, and that David Trujillo gestured with his hands like he had a gun. David Trujillo denies making such a gesture, but agrees that he walked toward Mr. Madera's car to confront the occupants about the earlier quarrel. All witnesses agreed that Mr. Guzman asked David Trujillo if he "wanted to play with guns?"

Mr. Madera next drove to a nearby parking lot, stopped the car, and took a rifle from the car's trunk. When leaving, Mr. Madera occupied the front passenger seat and Mr. Guzman was driving. Mr. Guzman testified he did not know what Mr. Madera had taken from the trunk. On the other hand, Mr. Valencia clearly saw the rifle from his rear seat position. Mr. Guzman and Mr. Valencia deny any conversation took place between the occupants.

Mr. Guzman drove back to the Cuevas group. Then, Mr. Madera moved sideways in his seat with his back to Mr. Guzman, and shot several times towards the Cuevas group. One bullet struck and killed Mr. Cuevas. Rodney Walker, a bystander sitting in his truck nearby, observed the critical events. A bullet struck Mr. Walker's truck. Mr. Walker testified Mr. Madera did not appear to be aiming at anyone in particular. Mr. Guzman then sped off. Twelve days later, Mr. Guzman turned himself in to the police.

Mr. Guzman was charged with (1) premeditated first degree murder (Mr. Cuevas); (2) attempted first degree murder (David Trujillo); (3), (4), and (5) first degree assault (Sergio Trujillo, Juan Uriel Trujillo, and Mr. Walker). A standard accomplice instruction was given. The alternate instruction for first degree murder, instruction 12, provided in part:

> (1) That on or about the 31st day of [May 1997], the defendant AIDAN MATTHEW GUZMAN aka AIDAN MATTHEW

CANTU, acted as an accomplice (as defined in these jury instructions) to Margarito Patricio Madera, who shot JOSE CUEVAS;

(2) That the conduct of the defendant and Margarito Patricio Madera created a grave risk of death to another person;

(3) That the defendant and Margarito Patricio Madera engaged in that conduct under circumstances manifesting an extreme indifference to human life.

The relevant portions of the assault instructions were identical except for the victim's name. Each provided in part:

(1) That on or about the 31st day of May, 1997, the defendant acted as an accomplice (as defined in these jury instructions) to Margarito Patricio Madera, who shot at [victim];

(2) That the defendant and Margarito Patricio Madera assaulted [victim].

The jury acquitted Mr. Guzman of premeditated first degree murder, however, found him guilty of the alternative, first degree murder by extreme indifference. The jury also acquitted on the second count. Guilty verdicts were entered for the first degree assaults of Sergio and Juan Trujillo, and a lesser count of second degree assault for Mr. Walker. Mr. Guzman appealed. We stayed this appeal pending the outcome of *Charles*, 135 Wn.2d 239. Under *Charles*, the State concedes "[t]he trial court incorrectly ordered the second degree assault firearm enhancement consecutive to all other sentences when it ordered the second degree assault sentence served concurrent to all other sentences." Br. of Resp't, page 13. The remaining issues relate to claims of instructional error.

## ANALYSIS
### A. Accomplice Liability

The issue is whether the trial court erred by instructing that to convict Mr. Guzman for the murder and the as-

saults the State must prove both Mr. Guzman *and* Mr. Madera acted to accomplish the murder and assaults. Mr. Guzman argues these instructions misstate the law of accomplice liability because the evidence indicates Mr. Madera was the sole shooter and the instructions require proof that Mr. Guzman acted as a principal.

 Jury instructions are reviewed de novo. *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995), *cert. denied*, 518 U.S. 1026 (1996). Jury instructions should be read as a whole in the context of the other instructions given. *State v. Brown*, 132 Wn.2d 529, 605, 940 P.2d 546 (1997), *cert. denied*, 523 U.S. 1007 (1998). Instructions become the law of the case when the parties fail to object even if they add an unnecessary element. *See State v. Ong*, 88 Wn. App. 572, 577, 945 P.2d 749 (1997).

Instruction 7, the standard accomplice instruction, provided:

> A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of a crime, he or she either:
>
> (1) solicits, commands, encourages, or requests another person to commit the crime; or
>
> (2) aids or agrees to aid another person in planning or committing the crime.
>
> The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.

In this case, when read as a whole, the first element of each of the "to convict" instructions required the jury to find that Mr. Guzman acted as an accomplice. The instructions clearly delineate that Mr. Madera was the principal actor (the shooter) and that Mr. Guzman was the accom-

plice (supported by evidence Mr. Guzman drove the shooter). Despite this language, Mr. Guzman incorrectly argues that the instructions define him as a principal actor. To support his position, Mr. Guzman isolates particular elements of each "to convict" instruction and then reads them out of context. Even so, Mr. Guzman does not dispute that sufficient evidence exists to support a guilty finding as an accomplice, assuming proper instructions.

■ Mr. Guzman argues the "to convict" jury instructions deprived him of his right to a unanimous verdict because the jury (1) was permitted to find him guilty as either a principal or an accomplice, and (2) was not given a proper unanimity instruction for the alternate theories of culpability.

This argument was recently rejected in *State v. McDonald*, 138 Wn.2d 680, 981 P.2d 443 (1999). The *McDonald* court held that if evidence exists of accomplice liability (here, Mr. Guzman, the driver) then no reason exists to further determine whether the accomplice acted as a principal (here, Mr. Madera, the shooter). *McDonald*, 138 Wn.2d at 686-87. The distinction between principal and accomplice liability is "empty" because the elements are the same. *Id.* at 688. Finally, the *McDonald* court observed statutory accomplice liability represents a legislative decision that the particular degree of participation is irrelevant so long as participation in some form is present. *Id.* at 689. Here the evidence allows reasonable inferences from Mr. Guzman's statements and driving to conclude significant participation. The jury could well decide that Mr. Guzman encouraged and aided Mr. Madera. The court did not err.

## B. Extreme Indifference

■ The issue is whether the trial court erred by submitting the issue of accomplice liability to the jury under the extreme indifference theory. Mr. Guzman argues one cannot be convicted as an accomplice of murder by extreme indifference because an accomplice must know he is assisting in the commission of a particular crime.

"[W]here criminal liability is predicated on the accomplice liability statute, the State is required to prove only the accomplice's general knowledge of his coparticipant's substantive crime. Specific knowledge of the elements of the coparticipant's crime need not be proved to convict one as an accomplice." *State v. Rice*, 102 Wn.2d 120, 125, 683 P.2d 199 (1984) (relying on *State v. Davis*, 101 Wn.2d 654, 682 P.2d 883 (1984)).

In *Rice*, the defendants were charged with felony murder resulting from an assault. Although the jury found each guilty as a principal, the *Rice* court discussed the "knowledge" necessary to hold a person accountable as an accomplice. The court explained that the State would have to prove the defendants' knowledge of their coparticipant's criminal assault on the victim, but not that their coparticipant had a weapon or what each intended to do with the weapon. *Rice*, 102 Wn.2d at 125.

Mr. Guzman contends that the State must prove that he knew he was assisting in the commission of murder by extreme indifference. He argues if the State could prove that he knew he was taking part in a murder, then he should have been charged with one of the more specific crimes of murder that include an element of knowledge or intent. For support, Mr. Guzman cites the settled rule that criminal conduct meeting the elements of both a specific crime and a general crime should be charged under the more specific crime. *State v. Haley*, 39 Wn. App. 164, 692 P.2d 858 (1984).

Mr. Guzman argues a person cannot be convicted as an accomplice to murder by extreme indifference because he could not "know" he was committing a nonintent crime. *State v. Dunbar*, 117 Wn.2d 587, 817 P.2d 1360 (1991). *Dunbar* was a "drive-by-shooting" where the defendants were charged with attempted murder by extreme indifference. The *Dunbar* court reasoned:

[T]he crime of attempt requires the actor to act with the objective or purpose of accomplishing a specific criminal result. With respect to the crime of murder by creation of a grave risk

of death, conduct creating a grave risk of death is not the criminal result. The completed crime requires a resulting death.

*Id.* at 591-92. The fatal weakness in Mr. Guzman's argument is that Mr. Cuevas died, unlike the victim in *Dunbar.* Moreover, the present crime is not attempted murder, thus, the intent required is different. *See State v. Modest*, 88 Wn. App. 239, 250, 944 P.2d 417 (1997) (accomplice liability requires knowledge rather than intent), *review denied*, 134 Wn.2d 1017 (1998). Although the crime of murder by extreme indifference requires a death, it does not require a specific intent of death. Instead, the facts need show merely that Mr. Guzman knew that his actions, along with Mr. Madera's actions, were extremely dangerous, and yet he was indifferent to the consequences. *State v. Barstad*, 93 Wn. App. 553, 564, 970 P.2d 324, *review denied*, 137 Wn.2d 1037 (1999).

 Moreover, it is well settled that accomplices and principals are equally culpable, regardless of which one actually performs the proscribed act because "principal and accomplice liability are not alternative means of committing a single offense." *McDonald*, 138 Wn.2d at 687. Stripped of its veneer, Mr. Guzman argues he was not the proximate cause of Mr. Cuevas's death. This is exactly the proposition rejected in *McDonald. Id.* We reject it as well.

As indicated above, Mr. Guzman concedes the evidence, if believed, supports accomplice liability. He is correct. Mr. Guzman leaned out the passenger window and shouted, "Do you want to play with guns?" Immediately thereafter, Mr. Madera pulled a rifle from the trunk and slipped into the front passenger seat with it in plain view of Mr. Guzman as Mr. Guzman moved to the driver's seat. The rifle was clearly visible to Mr. Valencia in the back seat, and from this the jury could infer Mr. Guzman saw the rifle as well. Mr. Guzman drove back to the scene. Mr. Madera turned around backwards in the passenger seat, held the rifle out the window and began shooting. Mr. Guzman then sped away, aiding Mr. Madera's escape and accomplishing

his own. Considering this evidence in a light most favorable to the State, a jury could reasonably find that Mr. Guzman knew what Mr. Madera was doing, encouraged him, and aided him with indifference to the consequences.

## CONCLUSION

We hold the trial court did not err when instructing the jury on accomplice liability. It matters not that Mr. Madera was the sole shooter. Principal and accomplice liability are the same. The State's theory of extreme indifference for the murder does not affect the applicability of general accomplice liability principles. The State does not have to prove Mr. Guzman was the proximate cause of Mr. Cuevas's death or the principal actor. The State concedes correctly that Mr. Guzman's sentence was erroneous under *In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 955 P.2d 798 (1998).

Affirmed and remanded for resentencing consistent with *Charles*.

SCHULTHEIS, C.J., and KATO, J., concur.

Review denied at 140 Wn.2d 1023 (2000).