119 P.3d 816 (2005)
In the Matter of the Personal Restraint of Jerry P. DOMINGO, Petitioner.
In the Matter of the Personal Restraint of Kiet Hoang Le, Petitioner.
In the Matter of the Personal Restraint of Bob R. Kaseweter, Petitioner.
Nos. 75920-1, 75951-1, 75976-6.
Supreme Court of Washington, En Banc.
Argued March 10, 2005.
Decided September 15, 2005.
*817 Suzanne Lee Elliott, Attorney at Law, Jacqueline Mc Murtrie, Suzanne Love, Taiyyeba Safri, Hilary House, UW Law School Clinical Law Program, Seattle, WA, for Jerry Domingo.
David Bruce Koch, Nielsen Broman & Koch PLLC, Seattle, for Kiet Hoang Le.
Jacqueline Mc Murtie, UW Law School Clinical Law Program, William H Gates Hall, Seattle, for Bob R. Kaseweter.
Thomas C. Duffy, Attorney at Law, Michael C. Kinnie, Attorney at Law, Philip A. Meyers, Attorney at Law, Robert W. Shannon, Attorney at Law, Vancouver, WA, for State of Washington.
J.M. JOHNSON, J.
¶ 1 We have previously held that our state's complicity statute, RCW 9A.08.020, requires that a defendant charged as an accomplice must have general knowledge of the charged crime in order to be convicted of that crime. See State v. Roberts, 142 Wash.2d 471, 14 P.3d 713 (2000); State v. Cronin, 142 Wash.2d 568, 14 P.3d 752 (2000). Petitioners Jerry Domingo, Kiet Le, and Bob Kaseweter each claim that they were convicted as an accomplice to various crimes in violation of that standard. Because they had exhausted their direct appeals, they filed personal restraint petitions.
¶ 2 The threshold question here is whether these petitions are timely. The Court of Appeals dismissed the petitions as time barred under RCW 10.73.090. Petitioners argue that their petitions are not subject to the one-year time bar of RCW 10.73.090 because *818 their claims are based on a "significant change in the law," an exception to the one-year limitation under RCW 10.73.100(6). Specifically, petitioners claim that Roberts and Cronin significantly changed the law of complicity, or accomplice liability, as previously set forth in State v. Davis, 101 Wash.2d 654, 682 P.2d 883 (1984), and its progeny. We disagree with petitioners and affirm the Court of Appeals.

I. FACTS AND PROCEDURAL HISTORY

A. The Convictions

1. Jerry Domingo
¶ 3 Early on the morning of May 31, 1994, Jerry Domingo led his gang in an armed robbery of a Vancouver convenience store. When the gang arrived at the store, Burton Morton was using a pay phone in front of the store and saw the perpetrators' faces as they had not yet donned their masks. During the course of the robbery, one of Domingo's associates shot Morton multiple times but failed to kill him. Other witnesses present who did not see the perpetrators' faces were assaulted but not shot.
¶ 4 A jury convicted Domingo of attempted murder in the first degree, robbery in the first degree, and assault in the first degree. Domingo appealed his convictions and the Court of Appeals affirmed in an unpublished opinion. The Court of Appeals issued its mandate on December 13, 1996.

2. Kiet Le
¶ 5 Early on the morning of October 5, 1995, Kiet Le and three associates broke into the home of Jing Xiu Zhu and Phuong Le.[1] The intruders found Jing and Phuong sleeping. They held the couple at gunpoint, restrained their hands and feet with duct tape, and threatened to kill the couple if they did not reveal the location of their valuables. The intruders took many items of property, then placed tape over the eyes and mouths of the victims and left. Shortly thereafter, Phuong freed herself and called the police. Le and his associates were arrested in a car later that day. Police found various items associated with the crimes in the car. They also found money and jewelry in Le's pockets.
¶ 6 A jury convicted Le of two counts of kidnapping in the first degree, two counts of robbery in the first degree, burglary in the first degree, possession of stolen property in the first degree, and possession of stolen property in the third degree. Le appealed his convictions and the Court of Appeals affirmed in an unpublished opinion. Le then petitioned this court for review. We earlier granted review on an issue unrelated to the instant action and remanded for resentencing. The superior court entered an amended judgment and sentence on October 29, 1998.

3. Bob Kaseweter
¶ 7 Early on the morning of April 23, 1992, Andrew Kington and his girl friend Roberta Ogle were awakened by a knock on the door of Kington's apartment and alerted that someone was pushing Ogle's car out of the apartment parking lot. Kington and Ogle walked out to the car which had been moved into the street. There they saw a man later identified as James Shirk. After reaching her car, Ogle also saw Donovan Shirk, James Shirk's brother, walking towards them from the other side of the street. Ogle had earlier worked with Donovan Shirk and Bob Kaseweter, her recently estranged ex-boyfriend. Ogle later testified that Kaseweter had taken her car keys after their breakup.
¶ 8 Donovan pulled out a gun and told Kington and Ogle to get in the car. Ogle got into the driver's seat and found the key in the ignition. After Kington got in, Ogle started the car and began to drive away. Donovan shot at the car several times, hitting Kington once in the hand. Soon thereafter, the police arrived and the Shirk brothers fled.
¶ 9 A jury convicted Donovan Shirk of two counts of first degree assault, two counts of first degree kidnapping, and taking a motor vehicle without permission. While awaiting *819 sentencing, Donovan attempted to escape. After his arrest on the escape charge, he admitted for the first time that his brother and Kaseweter were involved in the incident of April 23. James Shirk subsequently made a plea deal with the prosecutor. In exchange for offering testimony against Kaseweter and pleading guilty to second degree kidnapping and second degree assault, James Shirk received a sentence of nine months in the county jail.[2]
¶ 10 A jury convicted Kaseweter of conspiracy to commit kidnapping in the first degree and as accomplice to two counts of kidnapping in the first degree, two counts of assault in the first degree, and taking a motor vehicle without the owner's permission. Kaseweter appealed his convictions and the Court of Appeals affirmed in an unpublished opinion. The Court of Appeals issued its mandate on May 22, 1996.

B. The Instant Actions

¶ 11 Petitioners filed their personal restraint petitions with Division Two of the Court of Appeals on March 7, 2003 (Le), October 17, 2003 (Domingo), and February 9, 2004 (Kaseweter) respectively. Each petitioner claims that one or more of his convictions is invalid under Roberts and Cronin, and that his petition is not subject to the one-year time bar of RCW 10.73.090 because it is based on a "significant change in the law" under RCW 10.73.100(6). Kaseweter also claims that he possesses "newly discovered evidence" that exonerates him and exempts his petition from RCW 10.73.090 under RCW 10.73.100(1).
¶ 12 On July 26, 2004, the chief judge issued an order dismissing Domingo's petition as untimely under RCW 10.73.090. Shortly thereafter, Division Two issued a published opinion dismissing Le's petition. In re Pers. Restraint of Le, 122 Wash.App. 816, 95 P.3d 1254 (2004). Citing our statements in Roberts and Cronin that we were adhering to long-established precedent, the Court of Appeals held that those decisions did not significantly change the law of complicity for the purposes of RCW 10.73.100(6) and, as a result, Le's petition was untimely under RCW 10.73.090. Le, 122 Wash.App. at 820, 95 P.3d 1254.[3] Applying Le, the acting chief judge issued an order dismissing Kaseweter's petition two weeks later.
¶ 13 Petitioners all sought discretionary review in this court. We granted review and consolidated their petitions in an order dated December 1, 2004.

II. ANALYSIS
¶ 14 Generally, a defendant may not collaterally attack a judgment and sentence in a criminal case more than one year after his judgment and sentence becomes final. RCW 10.73.090(1). A personal restraint petition is a collateral attack on a judgment. RCW 10.73.090(2). A judgment and sentence becomes final on the day that it is filed with the clerk of the trial court, RCW 10.73.090(3)(a), or the day an appellate court issues its mandate disposing of a timely direct appeal from the conviction, RCW 10.73.090(3)(b).
¶ 15 Petitioners filed their PRPs outside the one-year limit provided in RCW 10.73.090(1). There are exceptions to the limit, however. RCW 10.73.100 provides in pertinent part:
The time limit specified in RCW 10.73.090 does not apply to a petition or motion that is based solely on one or more of the following grounds:
....
(6) There has been a significant change in the law, whether substantive or procedural, which is material to the conviction, sentence, or other order entered in a criminal or civil proceeding instituted by the state or local government, and either the legislature has expressly provided that the change in the law is to be applied retroactively, or a court, in interpreting a change in the law that lacks express legislative intent regarding retroactive application, determines that sufficient *820 reasons exist to require retroactive application of the changed legal standard.
¶ 16 Thus, before we will address the merits of their claims, petitioners must first demonstrate that our decisions in Roberts and Cronin constitute a significant change in the law of accomplice liability. This they fail to accomplish.[4]
¶ 17 The legislature enacted our state's complicity statute, RCW 9A.08.020, in 1975. See LAWS OF 1975, 1st Ex.Sess., ch. 260, § 9A.08.020, as amended by LAWS OF 1975-76, 2d Ex.Sess., ch. 38, § 1. It provides in pertinent part:
(1) A person is guilty of a crime if it is committed by the conduct of another person for which he is legally accountable.
(2) A person is legally accountable for the conduct of another person when:
...
(c) He is an accomplice of such other person in the commission of the crime.
(3) A person is an accomplice of another person in the commission of a crime if:
(a) With knowledge that it will promote or facilitate the commission of the crime, he
(i) solicits, commands, encourages, or requests such other person to commit it; or
(ii) aids or agrees to aid such other person in planning or committing it....
RCW 9A.08.020.
¶ 18 We first examined RCW 9A.08.020's knowledge requirement in a pair of cases in 1984: State v. Davis, 101 Wash.2d 654, 682 P.2d 883 (1984), and State v. Rice, 102 Wash.2d 120, 683 P.2d 199 (1984). In Davis, defendant stood lookout while his associate held up and robbed a pharmacy. Davis claimed that he did not know that his associate was armed and thus could not be convicted as an accomplice to first degree (armed) robbery.
¶ 19 Accordingly, his appeal presented us with the following narrow issue: "Where criminal liability for a first degree robbery is premised upon accomplice liability, must the State prove that the accomplice knew the principal was armed?" Davis, 101 Wash.2d at 655, 682 P.2d 883. This in turn "require[d] a determination of whether the accomplice liability statute predicates criminal liability on general knowledge of a crime or specific knowledge of the elements of the participant's crime, i.e., possession of a gun." Id. at 657, 682 P.2d 883.
¶ 20 We concluded that only "general knowledge" of the charged crime was required. Thus, Davis was validly convicted as an accomplice to first degree robbery even if he did not know the principal was armed because the State proved he had general knowledge that he was aiding in the crime of robbery.
¶ 21 We reinforced this conclusion one month later in Rice, stating that:
where criminal liability is predicated on the accomplice liability statute, the State is required to prove only the accomplice's general knowledge of his coparticipant's substantive crime. Specific knowledge of the elements of the coparticipant's crime need not be proved to convict one as an accomplice.
Rice, 102 Wash.2d at 125, 683 P.2d 199.
¶ 22 Petitioners argue, however, that dicta from Davis established a broader principle.[5] They contend that Davis and its progeny established the "in for a dime, in for a dollar" theory of complicity. This theory holds that accomplice liability attaches for any and all crimes committed by the principal so long as the putative accomplice knowingly aided in any one of the crimes. See, *821 e.g., Cronin, 142 Wash.2d at 586, 14 P.3d 752 (Talmadge, J., dissenting). Petitioners further claim that by rejecting this theory in Roberts and Cronin, we significantly changed the law of complicity for the purposes of RCW 10.73.100(6).
¶ 23 Petitioners' argument is contradicted by express language in Roberts and Cronin, however, wherein we expressly affirmed that we were "adher[ing] to the rule of Davis and Rice." Roberts, 142 Wash.2d at 513, 14 P.3d 713. We rejected the assertion of a minority of the court, see Cronin, 142 Wash.2d at 586-87, 14 P.3d 752 (Talmadge, J., dissenting), that Davis allowed the "conviction of an accomplice for any criminal result that occurred so long as the accomplice agreed to participate in any crime whatsoever." Roberts, 142 Wash.2d at 511, 14 P.3d 713. Instead, we expressly noted that Davis and Rice "merely reaffirm[ed] our long-standing rule that an accomplice need not have specific knowledge of every element of the crime committed by the principal, provided he has general knowledge of that specific crime." Id. at 512, 14 P.3d 713.
¶ 24 Our cases between Davis/Rice and Roberts/Cronin confirm this conclusion. See State v. Sweet, 138 Wash.2d 466, 479, 980 P.2d 1223 (1999) (relying on Davis in stating that "[i]t is not necessary for an accomplice to have specific knowledge of every element of the principal's crime."); State v. Hoffman, 116 Wash.2d 51, 104, 804 P.2d 577 (1991) (relying on Davis in stating that accomplice liability is predicated "on general knowledge of the crime and not on specific knowledge of the elements of the participant's crime.").
¶ 25 Moreover, while some language in Davis was rather broad, resolution of the issue before the court did not require us to determine the propriety of the "in for a dime, in for a dollar" theory. Thus, it cannot be maintained that Davis stands for that principle. See Malted Mousse, Inc. v. Steinmetz, 150 Wash.2d 518, 531, 79 P.3d 1154 (2003) ("`Statements in a case that do not relate to an issue before the court and are unnecessary to decide the case constitute obiter dictum, and need not be followed.'" (quoting State v. Potter, 68 Wash.App. 134, 149 n. 7, 842 P.2d 481 (1992))).
¶ 26 Despite this, petitioners insist that the arguments made by Roberts and Cronin were unavailable to petitioners at the time of their direct appeals, relying on several Court of Appeals' decisions and Washington Pattern Instruction  Criminal (WPIC) 10.51 (2d ed.1994) for support (discussed infra at 821-22). They argue these indicate a significant change in the law has occurred, allowing collateral attack in accordance with the reasoning of In re Pers. Restraint of Greening, 141 Wash.2d 687, 9 P.3d 206 (2000).
¶ 27 In Greening, we noted that we consider whether a personal restraint petitioner's argument was available to him on direct appeal in deciding whether there has been a significant change in the law under RCW 10.73.100(6). See In re Pers. Restraint of Greening, 141 Wash.2d at 697, 9 P.3d 206. We do not fault petitioners "for having omitted arguments that were essentially unavailable at the time...." Id. (emphasis in original). Thus, "where an intervening opinion has effectively overturned a prior appellate decision that was originally determinative of a material issue, the intervening opinion constitutes a `significant change in the law' for purposes of exemption from procedural bars." Id.
¶ 28 Petitioners note that Division One of the Court of Appeals employed similar reasoning in finding that Roberts and Cronin constitute a significant change in the law. See In re Pers. Restraint of Smith, 117 Wash.App. 846, 73 P.3d 386 (2003). Relying on the dissent in Cronin, the Smith court claimed that Roberts and Cronin constituted a "new interpretation" of the accomplice liability statute. Smith, 117 Wash.App. at 856, 73 P.3d 386. The Smith court accordingly concluded that it could not expect defendants to understand the limits of Davis when Division One itself failed to recognize those limits prior to Roberts and Cronin. Smith, 117 Wash.App. at 857, 73 P.3d 386. The court also stated that if Smith had claimed on direct appeal that the complicity instruction given at his trial was erroneous, it would have rejected his argument given Division One's understanding of Davis at that time. Id.
*822 ¶ 29 Division One's conclusion in Smith and petitioners' reliance on Greening fail for three reasons. First, and most obviously, RCW 9A.08.020 has not been amended in almost thirty years.[6] Thus, petitioners' argument was just as "available" to them on direct appeal as it was to Roberts and Cronin in their appeals.
¶ 30 Second, petitioners' argument and Smith are largely based on Cronin's dissent, rather than the majorities' holdings in Cronin and Roberts. Dissenting opinions are not binding upon this court. See Roberts v. Dudley, 140 Wash.2d 58, 75 n. 13, 993 P.2d 901 (2000).
¶ 31 Finally, a review of the cases relied on by petitioners reveals that the Courts of Appeal, while sometimes using imprecise or overbroad language, rarely if ever deviated from the holdings of Roberts, Cronin, and Davis during the 16 years separating those decisions.[7] Moreover, neither Davis nor any this court's decisions subsequent to Davis approves of the proposition that accomplice liability attaches for any and all crimes committed by the principal so long as the putative accomplice knowingly aided in any one of the crimes.
¶ 32 Given this, it is untenable to claim that Roberts and Cronin "effectively overturned a prior appellate decision that was originally determinative of a material issue" as required by Greening. Greening, 141 Wash.2d at 697, 9 P.3d 206; see also In re Pers. Restraint of Turay, 150 Wash.2d 71, 83, 74 P.3d 1194 (2003) (stating that an appellate decision that merely settles a point of law without overturning precedent, or applies settled law to new facts, does not constitute a significant change in the law).
¶ 33 Conversely, in Greening the petitioner had been sentenced pursuant to a Court of Appeals' decision that we explicitly reversed a few months later. Greening, 141 Wash.2d at 697-98, 9 P.3d 206 (citing State v. Lewis, 86 Wash.App. 716, 937 P.2d 1325 (1997), rev'd sub nom. In re Post Sentencing Review of Charles, 135 Wash.2d 239, 955 P.2d 798 (1998)).
¶ 34 Petitioners' reliance on WPIC 10.51 is similarly misplaced. Originally, WPIC 10.51 basically tracked the language of RCW 9A.08.020, requiring the State to prove that an accomplice had knowledge of "the" crime for which he was charged. See WPIC 10.51 (1977); WPIC 10.51 (Supp.1986). However, the Washington Supreme Court committee on jury instructions later amended WPIC 10.51 to provide that one could be convicted as an accomplice so long as he had knowledge of "a" crime committed by the principal. See WPIC 10.51 (2d ed.1994).[8]
¶ 35 The pattern jury instructions are "intended to be accurate, concise, unbiased statements of the law...." 13 ROYCE A. FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 4402, 256 (3d ed.2004). Nevertheless, they are not the law  they "are not mandatory, nor are they in any sense preapproved by the Supreme Court." 14A KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 31.2, 261 (2003). Thus, our discussion of WPIC 10.51 *823 (2d ed.1994) in Roberts and Cronin lends no support to petitioners' claims.
¶ 36 Petitioners finally argue that Roberts and Cronin constitute a significant change in the law pursuant to principles set forth in In re Pers. Restraint of Jeffries, 114 Wash.2d 485, 789 P.2d 731 (1990), and In re Pers. Restraint of Vandervlugt, 120 Wash.2d 427, 842 P.2d 950 (1992). In Jeffries we said that, in determining whether there has been a material change in the law, we will assess whether new decisions have provided us with an opportunity to refine our analysis and a larger pool of cases under which we may assess a petition.[9]Jeffries, 114 Wash.2d at 489, 789 P.2d 731. And in Vandervlugt, we found a significant change in the law where we decided a pair of cases that presented an issue of first impression in between petitioner's direct appeal and personal restraint petition that affected his conviction. Vandervlugt, 120 Wash.2d at 433-34, 842 P.2d 950. But here, as demonstrated above and as acknowledged in Roberts and Cronin, our approach to accomplice liability has avowedly remained consistent going back to Davis and Rice  decisions that long predate petitioners' convictions.

III. CONCLUSION
¶ 37 Because we find that Roberts and Cronin do not constitute a significant change in the law of complicity, the instant petitions are time barred under RCW 10.73.090. Accordingly, we do not address the other issues presented or the merits of petitioners' individual claims.[10]
¶ 38 Affirmed.
WE CONCUR: ALEXANDER, C.J., BRIDGE, CHAMBERS and OWENS, JJ.
MADSEN, J. (dissenting).
¶ 39 The majority erroneously concludes that State v. Roberts, 142 Wash.2d 471, 14 P.3d 713 (2000), and State v. Cronin, 142 Wash.2d 568, 14 P.3d 752 (2000) did not significantly change the law of accomplice liability and that the exception in RCW 10.73.100(6) to the one-year time limitation of RCW 10.73.090 therefore does not apply. In State v. Davis, 101 Wash.2d 654, 682 P.2d 883 (1984), this court explicitly reaffirmed the legal principle that once an accomplice agreed to participate in a criminal act, he or she ran the risk that the primary actor would exceed the scope of the prearranged crime. Id. at 658, 682 P.2d 883. Plainly, Roberts and Cronin altered this legal principle and significantly changed the law.
¶ 40 The Court of Appeals in In re Personal Restraint of Smith, 117 Wash.App. 846, 73 P.3d 386 (2003), reached the correct result. That court explained that based on its reading of Davis and its progeny it would have rejected, prior to Roberts, a challenge to the accomplice liability instruction invalidated in Roberts. Id. at 857, 73 P.3d 386. And in fact, the Court of Appeals had rejected the same challenge in another case. See id. at 856-57, 73 P.3d 386 (citing In re Pers. Restraint of Sarausad, 109 Wash.App. 824, 833-34, 39 P.3d 308 (2001), and explaining that based on Davis it had rejected the challenge on the petitioner's direct appeal in Sarausad). The Court of Appeals said in Smith, and I agree, "we cannot expect [the petitioner] to have understood the limitations of the Supreme Court's decision in Davis when we ourselves failed to recognize them until the Cronin and Roberts decisions were published." Smith, 117 Wash.App. at 857, 73 P.3d 386.
¶ 41 The majority says, though, that Roberts and Cronin did not constitute a significant change in the law because the language of the accomplice liability statute made available the argument that liability attaches only if the accomplice knowingly aids the principal in the commission of the specific crime for *824 which the accomplice is charged. But as the Court of Appeals explained, the argument was rejected prior to Roberts and Cronin despite the statutory language.
¶ 42 Like the Court of Appeals, even this court failed to understand the limitations of its decision in Davis, as is apparent from the fact that less than a month after Davis was filed the court handed down State v. Rice, 102 Wash.2d 120, 124, 683 P.2d 199 (1984), where the jury instruction stated the law of accomplice liability that was subsequently held invalid in Roberts and Cronin. And at that time the accomplice liability statute, as now, provided for accomplice liability if the accomplice acted with knowledge that his or her acts would "`promote or facilitate the commission of the crime.'" Davis, 101 Wash.2d at 657, 682 P.2d 883 (quoting RCW 9A.08.020(3)(a)) (emphasis added).
¶ 43 In an attempt to rewrite history, the majority says that Roberts expressly adhered to Davis and thus did not change the law. But Roberts and Cronin adhered only to the holding in Davis that to establish accomplice liability the State must prove that the accomplice acted with general knowledge of the principal's crime; the State does not have to prove that the accomplice had specific knowledge of the elements of the crime. Roberts, 142 Wash.2d at 512-13, 14 P.3d 713; Cronin 142 Wash.2d at 578, 14 P.3d 752. Roberts and Cronin broke new ground, however, in holding that the accomplice must have knowledge of the crime charged. Roberts, 142 Wash.2d at 509-13, 14 P.3d 713; Cronin, 142 Wash.2d at 578-79, 14 P.3d 752.
¶ 44 The majority labels as dicta the ruling in Davis that "the law has long recognized that an accomplice, having agreed to participate in a criminal act, runs the risk of having the primary actor exceed the scope of the preplanned illegality." Davis, 101 Wash.2d at 658, 682 P.2d 883. But the court was directly addressing the rationale for the holding in the case, and its statement was not dicta. See State v. Robertson, 88 Wash.App. 836, 847, 947 P.2d 765 (1997) (explaining that "the court in Davis based its decision in part on the distinction between substantive crimes and enhancement statutes").
¶ 45 The majority rejects the petitioner's reliance on 11 Washington Pattern Jury Instructions: Criminal 10.51, at 157 (2d ed. 1994) (WPIC)[1] as showing that Roberts and Cronin changed the law. But this court has expressly referred prosecutors to the WPICs for the purpose of identifying the elements of a crime. State v. Vangerpen, 125 Wash.2d 782, 791 n. 17, 888 P.2d 1177 (1995); State v. Kjorsvik, 117 Wash.2d 93, 102 n. 13, 812 P.2d 86 (1991). The court has also referred to the WPICs themselves to identify elements of a crime in both criminal and civil cases. E.g., State v. Lee, 128 Wash.2d 151, 158-59, 904 P.2d 1143 (1995); Mendoza v, Rivera-Chavez, 140 Wash.2d 659, 676, 999 P.2d 29 (2000).
¶ 46 Despite the majority's attempt to avoid the consequences of our decisions, Roberts and Cronin constitute a significant, material change in the law of accomplice liability, and the petitioners should not be faulted for having failed to make an argument that was essentially unavailable on their direct appeals. See In re Pers. Restraint of Greening, 141 Wash.2d 687, 696-97, 9 P.3d 206 (2000). RCW 10.73.090's one year time bar to filing personal restraint petitions does not apply where there has been "a significant change in the law, whether substantive or procedural, which is material to the conviction ... [and] sufficient reasons exist to require retroactive application of the changed legal standard." RCW 10.73.100(6).
¶ 47 Because I would hold that Roberts and Cronin constitute a significant change in the law material to petitioners' convictions, the next question under RCW 10.73.100(6) is whether Roberts and Cronin should be applied retroactively to cases on collateral review. Roberts and Cronin are based on the court's construction of the accomplice liability statute. When this court construes a statute, its construction is deemed to be what the *825 statute has meant since its enactment. State v. Moen, 129 Wash.2d 535, 538, 919 P.2d 69 (1996). Such a ruling is "automatically `retroactive.'" Greening, 141 Wash.2d at 693 n. 7, 9 P.3d 206 (quoting Moen, 129 Wash.2d at 538, 919 P.2d 69).
¶ 48 Importantly, the holding in Roberts and Cronin does not concern a new rule of criminal procedure. See generally In re Pers. Restraint of Markel, 154 Wash.2d 262, 268-69, ¶ 11, 111 P.3d 249 (2005) (describing analysis for determining retroactive application on collateral review of a new rule for the conduct of criminal prosecutions). Instead, the substantive law of accomplice liability is at issue. As the United States Supreme Court recently explained, a new substantive rule generally applies retroactively. Schriro v. Summerlin, 542 U.S. 348, ___, 124 S.Ct. 2519, 2522, 159 L.Ed.2d 442 (2004). This is true of "decisions that narrow the scope of a criminal statute by interpreting its terms." Id. While the Teague[2] doctrine will generally preclude application of procedural rules retroactively on collateral review, the same is not true of substantive rules affecting criminal liability. Bousley v. United States, 523 U.S. 614, 620, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).
¶ 49 Thus, the one-year bar of RCW 10.73.090 does not apply in this case, and the court should determine whether the petitioners have met their burden of showing that they were actually and substantially prejudiced by the claimed error. See State v. Evans, 154 Wash.2d 438, 453, ¶ 30, 114 P.3d 627 (2005) (personal restraint petitioners asserting error in giving the accomplice liability instructions invalidated in Roberts must meet this burden).
¶ 50 I dissent.
SANDERS, C. JOHNSON and FAIRHURST, JJ., concur.
NOTES
[1] Because one of the victims here shares petitioner's last name, we use the victims' first names for clarity.
[2] Donovan Shirk was also to offer testimony against Kaseweter, but reneged on his deal.
[3] This holding directly conflicted with Division One's decision in In re Pers. Restraint of Smith, 117 Wash.App. 846, 73 P.3d 386 (2003) (discussed infra at 821).
[4] Had they shown such change in law, petitioners also would have had to demonstrate that the change was material to their convictions, and that the change applies retroactively, before we would reach the merits of their petitions. RCW 10.73.090(6).
[5] Specifically, petitioners point to our statement that "the law has long recognized that an accomplice, having agreed to participate in a criminal act, runs the risk of having the primary actor exceed the scope of the preplanned illegality." Davis, 101 Wash.2d at 658, 682 P.2d 883. We also said that "the Legislature has a valid interest in discouraging the use of deadly weapons by imposing strict liability on all those involved in robbery...." Id. at 659, 682 P.2d 883.
[6] RCW 9A.08.020 was last amended by Laws of 1975-76, 2d Ex.Sess., ch. 38, § 1.
[7] See State v. Johnston, 100 Wash.App. 126, 139, 996 P.2d 629 (2000), petition for relief from personal restraint granted in part, 125 Wash.App. 1032 (2005); State v. Guzman, 98 Wash.App. 638, 645, 990 P.2d 464 (1999), as amended (2000); State v. Robertson, 88 Wash.App. 836, 846-47, 947 P.2d 765 (1997); State v. Jackson, 87 Wash.App. 801, 818, 944 P.2d 403 (1997); State v. Hinds, 85 Wash.App. 474, 484-85, 936 P.2d 1135 (1997); State v. Ferreira, 69 Wash.App. 465, 471-72, 850 P.2d 541 (1993); State v. Langford, 67 Wash.App. 572, 580-81, 837 P.2d 1037 (1992); State v. Anderson, 63 Wash.App. 257, 260-61, 818 P.2d 40 (1991); State v. Randle, 47 Wash.App. 232, 236-37, 734 P.2d 51 (1987); State v. Davis, 39 Wash.App. 916, 920-21, 696 P.2d 627 (1985); State v. Gamboa, 38 Wash.App. 409, 413-14, 685 P.2d 643 (1984). But see In re Pers. Restraint of Sarausad, 109 Wash.App. 824, 833-34, 39 P.3d 308 (2001); State v. Swenson, 104 Wash.App. 744, 757, 9 P.3d 933 (2000). It should be noted that these latter two opinions were decided after petitioners' direct appeals became final, and thus could not have affected their convictions.
[8] Domingo received a complicity instruction that generally tracked the language of RCW 9A.08.020. Le received a complicity instruction similar to the amended WPIC 10.51 (2d ed.1994). Kaseweter received a complicity instruction similar to the original WPIC 10.51 with some dicta from Davis appended.
[9] It should be noted that Jeffries dealt not with RCW 10.73.100(6), but rather with whether petitioner had good cause for renewing claims that had previously been rejected on direct appeal and in his first two personal restraint petitions.
[10] Specifically, we need not decide whether Kaseweter's petition contains "newly discovered evidence" for the purposes of RCW 10.73.100(1). Even if it does, "[w]here one or more of the grounds asserted for relief fall within the exceptions in RCW 10.73.100 and one or more do not, then the petition is a `mixed petition' that must be dismissed." Turay, 150 Wash.2d at 85-86, 74 P.3d 1194.
[1] WPIC 10.51 (2d ed.1994) provided:

"A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of a crime, he or she either:
"(1) solicits, commands, encourages, or requests another person to commit the crime; or
"(2) aids or agrees to aid another person in planning or committing a crime." (Emphasis added.)
[2] Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).