# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>        Respondent,<br><br>v.<br><br>HOKESHINA LEE TOLBERT,<br><br>        Appellant. | No. 75035-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED:  June 13, 2016 |

LEACH, J. — Hokeshina Lee Tolbert appeals his conviction of murder in the second degree after the trial court denied his request to withdraw his guilty plea. Tolbert challenges the voluntariness of his plea.  He claims that he did not have adequate knowledge about how his actions related to accomplice liability.  He also claims that the trial court should have ordered a competency hearing. Finally, he argues that the trial court should not have accepted his guilty plea because sufficient facts did not support that a jury could find him guilty of the crime charged.  Because the record shows that he entered into his guilty plea voluntarily, knowingly, and intelligently, because Tolbert failed to provide substantial evidence of incompetency, and because sufficient facts support the trial court's acceptance of his guilty plea based on his accomplice liability, we affirm.

## Background

On May 10, 2008, Michael Mee was involved in a fight at a barbeque at a residence in Tacoma. Mee left the scene in a car with several people and drove to another residence.

When Mee arrived, he went into the house and came out with several people including Tolbert, who was carrying a rifle. Tolbert gave the rifle to Mee. Mee got into in the front passenger seat of a vehicle parked in front of the residence. Tolbert got into the car Mee had arrived in. Both vehicles went back to the barbeque. Mee fired two rounds from the rifle at people standing in the yard of the residence. One struck Tracy Steele in the torso, killing him.

Tolbert told police that "they" had given Mee the rifle, that he knew the rifle would be used to shoot someone, that he followed Mee to the shooting, and that he retrieved the rifle from Mee after the shooting.

The State charged Tolbert, then 16 years old, as an adult,[1] with one count of first degree murder under accomplice liability and one count of unlawful possession of a firearm in the second degree. On the order for omnibus hearing, the box stating "Defendant needs a competency examination" is checked. The trial court discussed this with Tolbert's counsel at the omnibus hearing. Counsel stated that he did not know why the box was checked. Tolbert entered into a plea agreement for one count of murder in the second degree in exchange for testifying against others involved in the crime. Tolbert pleaded guilty to the

---

[1] See RCW 13.04.030(1)(e)(v)(A).

amended information on January 29, 2009. Paragraph 11 of his plea agreement read,

> On May 10, 2008 in Pierce Co. Washington Michael Mee came to my cousin's house and asked for a gun. I went and got a 30-30 rifle from the garage. Michael Mee took the gun and went to the residence where Tracy Steele was at. I was in a car following another car Michael Mee was riding in. I watched Michael Mee fire two shots at the house. Tracy Steele was hit by the bullets and died. Jesus Cota Ancheta was driving the car Michael Mee fired the shots from. I knew Michael Mee was going to use the gun to shoot someone.

During the plea hearing on January 28, 2009, the trial court conducted a colloquy with Tolbert. Among other things, the court described the consequences of pleading guilty. Tolbert told the trial court that he had reviewed the statement on plea of guilty and the plea agreement with his attorney and that he understood the consequences listed in it, including his waiver of his rights to jury trial and to testify in his own defense. The trial court informed him of the maximum sentence possible for conviction of second degree murder. Tolbert acknowledged the terms of his plea agreement. The trial court specifically questioned Tolbert about paragraph 11 of his plea statement, and Tolbert confirmed the accuracy of his statement about the events constituting the crime. Tolbert agreed that the trial court had no reason to hesitate to accept his plea.

On March 18, 2009, Tolbert, acting pro se, filed a declaration stating, "I've been trying to get ahold of my lawyer to tell him I want to withdraw my plea bargain but he don't return or answer my calls." He wrote that his lawyer had misled him about the number of years he would be sentenced, that his lawyer

forced him to take the deal by not communicating with him, and that he was coerced into making statements on July 1, 2008. He also requested a new attorney in a declaration filed on October 7, 2009, saying that his attorney had failed to schedule him an incompetency hearing. The trial court did not act on these declarations.

At sentencing on March 12, 2010, the State reduced its sentencing recommendation from 220 months of incarceration to 150 months because Tolbert fulfilled his plea agreement by testifying in the other trials. Tolbert's mother testified to some of the difficulties Tolbert experienced, including attention deficit hyperactivity disorder and posttraumatic stress disorder. The trial court recognized that Tolbert's "credible and forthright" testimony helped the State convict Mee. The trial court imposed a 150-month sentence. Tolbert did not ask to withdraw his plea during the hearing.

Tolbert filed a notice of appeal on November 10, 2014. On November 12, Tolbert filed a motion to extend time to file notice of appeal. On February 23, 2015, Division Two of this court granted the motion because "the Plea Agreement and Statement on Plea of Guilty did not waive all of Tolbert's appeal rights and because the trial court did not advise him of any remaining appeal rights during the sentencing hearing."

Analysis

Tolbert asks this court to allow him to withdraw his guilty plea. We review a trial court's denial of a motion to withdraw a guilty plea for abuse of discretion.[2]

CrR 4.2(f) requires that a court "allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice." A manifest injustice occurs when a defendant's plea was involuntary.[3] "It is reversible error for a trial court to accept a guilty plea without an affirmative showing in the record that the plea was made intelligently and voluntarily."[4]

Tolbert argues that his guilty plea is invalid because it was not voluntary, knowing, or intelligent. Primarily, Tolbert claims that his plea was not knowing. Due process requires that the defendant pleading guilty understand the elements of the crime charged and how those elements relate to the facts alleged.[5] To meet the minimum requirements for constitutional due process, a "'defendant would need to be aware of the acts and the requisite state of mind in which they must be performed to constitute a crime.'"[6]

---

[2] State v. Williams, 117 Wn. App. 390, 398, 71 P.3d 686 (2003).

[3] State v. Wakefield, 130 Wn.2d 464, 472, 925 P.2d 183, aff'd, 130 Wn.2d 464, 925 P.2d 183 (1996).

[4] State v. King, 130 Wn.2d 517, 530, 925 P.2d 606 (1996).

[5] In re Pers. Restraint of Hews, 99 Wn.2d 80, 87, 660 P.2d 263 (1983) (Hews I) (quoting McCarthy v. United States, 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969)).

[6] State v. Osborne, 102 Wn.2d 87, 93, 684 P.2d 683 (1984) (quoting In re Pers. Restraint of Keene, 95 Wn.2d 203, 207, 622 P.2d 360 (1980)).

Tolbert contends that he did not understand the nature of the charge against him because the statement of defendant on plea of guilty did not explain the legal meaning of accomplice, nor did it state that Tolbert knew at the time he got the gun that Mee would use it to kill Steele. He argues that his statement does not make clear what he heard Mee say, whom he got the gun for, or when he first learned that Mee planned to use the gun to shoot someone. He argues that because the timing of this knowledge matters to his accomplice liability,[7] failure to communicate this to him constituted error. Tolbert also argues that the circumstances of his age and background should weigh against the validity of the plea.

To establish accomplice liability, the State had to prove that Tolbert aided or agreed to aid a person in planning or committing a crime with knowledge that it would promote or facilitate the commission of the crime.[8] The State had to prove Tolbert's knowledge of the specific crime charged rather than knowledge of a different crime or generalized knowledge of criminal activity.[9]

Here, the trial court confirmed at Tolbert's plea hearing that he understood his "role in this was providing the rifle that became the murder weapon." Tolbert

---

[7] See Rosemond v. United States, ___ U.S. ___, 134 S. Ct. 1240, 1251, 188 L. Ed. 2d 248 (2014) (A defendant charged with aiding and abetting an armed drug sale who learns of a gun only after he may reasonably walk away does not have the requisite intent to bring about an armed drug sale.).

[8] RCW 9A.08.020(3)(a)(ii) provides, "A person is an accomplice of another person in the commission of a crime if: (a) With knowledge that it will promote or facilitate the commission of the crime, he or she . . . (ii) Aids or agrees to aid such other person in planning or committing it."

[9] State v. Cronin, 142 Wn.2d 568, 578-79, 14 P.3d 752 (2000).

signed the plea agreement with the State outlining his obligations and the benefits he received because he pleaded guilty. He signed the statement on plea of guilty, which also incorporated a declaration for a determination on probable cause, establishing the factual basis for his plea. That document showed that Tolbert had received a copy of the amended information reflecting the reduction in charges. The amended information included the prosecutor's statement, "The defendant is an accomplice to the murder. The defendant provided the firearm used to kill the victim (Tracy Steele) with knowledge that the firearm would be used in a drive-by scenario." When the State provides the defendant with an information notifying him of the nature of the crime, this creates a presumption that the defendant entered into the plea knowingly.[10] And Tolbert's attorney stated at the hearing that he had reviewed the plea agreement and the statement on plea of guilty with Tolbert. The record shows that Tolbert was aware of the charges against him, how his actions related to those charges, and the benefits he gained by taking the plea agreement. We conclude Tolbert knowingly pleaded guilty.

Tolbert also argues that "youth and lack of education make it even more likely that he did not understand the legal requirements as they related to the facts." He faults the trial court for not engaging in a more specific colloquy with him to ensure his understanding of the rights he relinquished by pleading guilty.

---

[10] In re Pers. Restraint of Hews, 108 Wn.2d 579, 595-96, 741 P.2d 983 (1987) (Hews II).

But he cites no authority requiring this court to give weight to these factors in this context without demonstrating some further incompetency. We thus decline to do so.

We also conclude that Tolbert voluntarily and intelligently entered into his guilty plea. A plea is voluntary when a defendant understands the "nature and extent of the constitutional protections waived by pleading guilty."[11] A strong presumption exists that a plea is voluntary when a defendant reads, understands, and signs a plea statement.[12] And where a trial court inquires about a specific matter of the plea statement, the presumption that the plea is voluntary is "well nigh irrefutable."[13] Here, the trial court engaged in a colloquy with Tolbert at his plea hearing and confirmed that he was aware that by pleading guilty he would give up his right to trial, to question witnesses, to a presumption of innocence, and to appeal a resulting conviction. The record supports that Tolbert was aware of the rights he relinquished and that the guilty plea was voluntary.

And a guilty plea is intelligent where the defendant is informed of all of the direct consequences of pleading guilty.[14] The plea agreement and statement on plea of guilty both outlined the sentencing consequences of Tolbert's plea and stated that his sentencing range would be from 123 to 220 months.[15] Tolbert's attorney stated at the hearing that Tolbert "understands the State is going to, in

---

[11] Hews I, 99 Wn.2d at 87.
[12] State v. Smith, 134 Wn.2d 849, 852, 953 P.2d 810 (1998).
[13] State v. Perez, 33 Wn. App. 258, 262, 654 P.2d 708 (1982).
[14] In re Pers. Restraint of Isadore, 151 Wn.2d 294, 300, 88 P.3d 390 (2004).
[15] See Isadore, 151 Wn.2d at 297-98.

exchange for a reduction to Murder 2, recommend 220 months," that he is pleading to a strike offense, and that if Tolbert breaks the agreement then he will be charged with first degree murder. The trial court confirmed that Tolbert understood the maximum penalty for the crime, the standard sentencing range, community custody consequences, and that a strike offense means that if he were convicted of three of these kinds of offenses he would be subject to life in prison without parole. The record supports that Tolbert's guilty plea was intelligent.

Because the record affirmatively shows that Tolbert made a voluntary, knowing, and intelligent plea, the trial court did not err in concluding the same and accepting his guilty plea.

Tolbert next argues that his plea is invalid because the trial court accepted it before resolving the issue of his competency. He argues the order on omnibus hearing, with a box checked that the "[d]efendant needs a competency hearing," required the court to inquire into his competency, and it erred when it failed to do so at his plea hearing. He also claims that the trial court should have considered Tolbert's competency after he entered into a guilty plea when his mother told the court about Tolbert's struggles with mental health issues. He also claims that his two pro se declarations called his competency into question.

A defendant must be competent in order to enter into a valid guilty plea.[16] In reviewing Tolbert's competency hearing challenge, we look to see if "'the plea

---

[16] RCW 10.77.050.

represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"[17] A trial court has broad discretion to judge the mental competency of a defendant to plead guilty.[18] A trial court may consider several factors to determine if it needs to inquire formally into a defendant's competency, including the "'defendant's appearance, demeanor, conduct, personal and family history, past behavior, medical and psychiatric reports and the statements of counsel.'"[19]

A defendant must present substantial evidence to raise adequately a legitimate question of competency, requiring the court to order a competency hearing.[20] When a defendant fails to do this, a trial court need not hold a competency hearing.[21] The State argues that Tolbert never raised a legitimate question of his competence because he did not produce substantial evidence to raise a legitimate question of incompetency. We agree.

First, during the omnibus hearing, the trial court addressed the checked box on the omnibus hearing form and determined that no request had been made.

> [DEFENSE COUNSEL]: Your honor, in the Omnibus Order that's been prepared by [another defense counsel], it indicates that

---

[17] Osborne, 102 Wn.2d at 98 (quoting North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970)).

[18] Osborne, 102 Wn.2d at 98 (quoting State v. Loux, 24 Wn. App. 545, 548, 604 P.2d 177 (1979)).

[19] In re Pers. Restraint of Fleming, 142 Wn.2d 853, 863, 16 P.3d 610 (2001) (quoting State v. Dodd, 70 Wn.2d 513, 514, 424 P.2d 302 (1967)).

[20] State v. DeClue, 157 Wn. App. 787, 792, 239 P.3d 377 (2010).

[21] DeClue, 157 Wn. App. at 793.

there may be a competency examination, and I don't know what he means by that.

THE COURT: Well, that's kind of an unusual situation to have floating around, I would think. Do you have knowledge about this Mr. [Prosecutor]?

[PROSECUTOR]: No, sir.

THE COURT: Okay. I am going to assume that [another defense attorney] is just covering his bases. At the moment, you have no indication that there's a request for a competency evaluation at this point?

[DEFENSE COUNSEL]: No, I do not.

At the hearing, Tolbert's counsel thus expressly withdrew any request otherwise indicated by the checked box. Tolbert did not raise the issue of competency at any other point before he entered into his plea.

Nor did Tolbert present substantial evidence of his incompetency after he pleaded guilty. Neither his declaration claiming he had been coerced into making the plea nor his request for new counsel stating that he had asked counsel to schedule him a competency hearing requires that the trial court find incompetence when the trial court had also been able to observe his competent testimony elsewhere.

We conclude that the trial court acted well within its discretion to determine that Tolbert was competent to enter into a voluntary, knowing, and intelligent plea.

Finally, Tolbert argues that an insufficient factual basis existed for the trial court to accept his guilty plea because Tolbert pleaded to second degree murder

requiring specific intent when the State charged Mee, the principal actor, with a general intent crime of first degree murder by extreme indifference.

To accept a guilty plea there must be evidence sufficient for a jury to find guilt, but the trial court does not need to conclude beyond a reasonable doubt that the defendant is guilty.[22] Thus, in this case, for the trial court to accept the plea, the record had to demonstrate sufficient evidence to show that a jury could find that Tolbert had knowledge that he was aiding in the commission of the crime for which Mee was charged.[23]

Tolbert argues that a jury could not find him guilty of accomplice liability because that would require it to find that he had knowledge of Mee's crime. Tolbert argues that because the State charged Mee with first degree murder by extreme indifference, a crime that does not require proof of "specific intent to murder Mr. Steele, it is logically impossible for Tolbert to have had the knowledge that producing the gun from the garage would facilitate that murder, as required for accomplice liability."[24] Tolbert cites State v. Dunbar[25] in support of this argument. There, the Washington Supreme Court held that because the crime of attempt requires that a defendant act with the intent to accomplish a specific criminal result, "in order to serve as a basis for the crime of attempt, a crime

---

[22] State v. Bao Sheng Zhao, 157 Wn.2d 188, 198, 137 P.3d 835 (2006).
[23] See RCW 9A.08.020(3)(a)(ii); see also Cronin, 142 Wn.2d at 578-79.
[24] RCW 9A.32.030(1)(b) provides, "(1) A person is guilty of murder in the first degree when: . . . (b) Under circumstances manifesting an extreme indifference to human life, he or she engages in conduct which creates a grave risk of death to any person, and thereby causes the death of a person."
[25] 117 Wn.2d 587, 817 P.2d 1360 (1991).

defined by a particular result must include the intent to accomplish that criminal result as an element."[26]

But in State v. Guzman,[27] Division Three of this court distinguished the intent required for attempted murder in Dunbar from that required for accomplice liability. The Guzman court concluded that facts need only show that an accomplice to first degree murder by extreme indifference knew that his actions, along with those of the principal, were extremely dangerous and yet he was indifferent to the consequences.[28] Thus, the State need only prove that Mee "'(1) acted with extreme indifference, an aggravated form of recklessness, which (2) created a grave risk of death to others, and (3) caused the death of a person.'"[29]

Tolbert attempts to distinguish Guzman, arguing that here Tolbert pleaded guilty to the different, specific intent crime of second degree murder rather than to first degree murder by extreme indifference. But his argument asks this court to overlook that the State originally charged Tolbert with accomplice liability to Mee's crime of first degree murder by extreme indifference. Because the factual basis requirement is intended to ensure voluntariness, where a factual basis exists for an original charge, "a defendant can plead guilty to amended charges for which there is no factual basis, but only if the record establishes that the

---

[26] Dunbar, 117 Wn.2d at 589-90.
[27] 98 Wn. App. 638, 645-46, 990 P.2d 464 (1999).
[28] Guzman, 98 Wn. App. at 646.
[29] State v. Henderson, 180 Wn. App. 138, 145, 321 P.3d 298 (2014) (quoting State v. Yarbrough, 151 Wn. App. 66, 82, 210 P.3d 1029 (2009)), aff'd, 182 Wn.2d 734, 344 P.3d 1207 (2015).

defendant did so knowingly and voluntarily."[30] Thus, under Guzman, acceptance of Tolbert's guilty plea required the trial court to conclude by sufficient evidence that a jury could find that Tolbert knew that his actions and those of Mee were extremely dangerous but that Tolbert was indifferent to the consequences.

Here, Tolbert admitted that he handed Mee the rifle, knowing Mee would use it to shoot someone. He accompanied Mee to the barbeque where he witnessed Mee shoot into a crowd and hit Steele with a bullet. Tolbert then left with Mee and accepted the gun back after the event. Because a jury could rely on this evidence to find that Tolbert had knowledge that when he provided Mee the gun that Mee would use it to shoot another person, the trial court did not err when it entered judgment and sentence on Tolbert's guilty plea.

## Conclusion

The record establishes that Tolbert entered into his guilty plea voluntarily, knowingly, and intelligently. The trial court did not abuse its discretion when it found that Tolbert was competent to plead guilty. Finally, the record includes sufficient facts to show that a jury could have convicted Tolbert of accomplice

---

[30] Bao Sheng Zhao, 157 Wn.2d at 200.

liability for murder. Thus, the trial court did not err when it accepted Tolbert's guilty plea, and no manifest injustice warrants its withdrawal. We affirm.

_Leach, J._

WE CONCUR:

_Trickey, A.C.J._                    _Cox, J._