[Nos. 39164-0-I; 39170-4-I; Division One. November 24, 1997.] 39375-8-I.

THE STATE OF WASHINGTON, *Respondent*, v. BOBBIE ROBERTSON, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. SARAH L. LEWIS, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. DWAYLE JACK, *Appellant*.

*Oliver R. Davis* of *Washington Appellate Project*; *James R. Dixon* and *Mark V. Watanabe* of *Nielsen, Broman & Associates, P.L.L.C.*; and *Douglas J. Ende* of *Ende, Subin & Philip*, for appellants.

*Norm Maleng, Prosecuting Attorney*, and *Pamela K. Mohr, Deputy*, for respondent.

Cox, J. — Beatrice Simpson (BJ) hurled several racial slurs at Tiana Leahy while Leahy waited for a bus. This escalated into a physical attack on Leahy in which BJ and three other African American females participated. Because the evidence is sufficient to support the adjudication for third degree assault, the findings of fact are sufficient to sustain the conclusion that each of the three females were accomplices to the crime of malicious harassment, and the antimerger provision of the malicious harassment statute applies to this case, we affirm the adjudication and disposition.

In November 1995, Tiana Leahy left her school in north Seattle and crossed the street to catch her bus. Sarah Lewis, Dwayle Jack, Bobbie Robertson, and BJ were among those at the bus stop. Leahy testified that while she was crossing the street, she heard BJ say, "Here comes that white bitch with her rainbow back pack." Leahy

crossed the street and walked past BJ to wait for the bus. BJ made further racial statements about Leahy to Robertson, Lewis, and Jack. She then approached Leahy, asked her to fight, and punched her in the face.

Robertson, Lewis, and Jack then threatened and insulted Leahy. All three took turns holding her on the ground and punching and kicking her. Robertson and Jack slammed Leahy's head on the ground. Eventually, Leahy's attackers ran in the direction of Nathan Hale High School. Leahy called her parents and the police.

Upon arriving at the scene, the police took Leahy to Nathan Hale to identify her assailants. At the school, Leahy, a police officer, and Leahy's mother went to the school's office. Leahy described the girls who attacked her to the vice-principal. When the vice-principal brought in Lewis, Jack, and Robertson, Leahy identified them as her assailants.

The police officer testified at the fact-finding hearing that Jack made a statement to him that she saw Lewis kick Leahy. Jack also admitted to the officer that she punched Leahy.

T.F., a Nathan Hale student, testified that she heard some people at the bus stop referring to Leahy as "that white bitch." She saw BJ punch Leahy. Later, she saw other people gathered around Leahy, but could not see exactly what was happening.

Leahy testified at the hearing that her attackers slammed her head into the ground several times and that this "felt like somebody's taking like a sledge hammer kind of to the back of my head over and over and over again." She suffered bruises and scrapes on her legs, bruises on her hips, ribs, and back, a black eye, and four abrasions and lumps on the back of her head. She stated that she had a severe headache that lasted for two weeks and that she stayed home from school as a result of her injuries for three or four days.

By amended information, the State charged Robertson, Lewis, and Jack each with one count of malicious harass-

ment, one count of second degree assault, and, alternatively, one count of third degree assault. The juvenile court found Robertson, Jack, and Lewis guilty of third degree assault and malicious harassment.

In this consolidated appeal, Robertson, Jack, and Lewis argue that the trial court's findings of fact are insufficient to support the element of intent for malicious harassment. Jack and Lewis contend that the trial court's conclusion that they are guilty of assault in the third degree is not supported by sufficient evidence. Jack also contends that her sentence violates the 150 percent rule set forth in the Juvenile Justice Act of 1977.[1]

### I. Sufficiency of Evidence

Jack and Lewis argue that there is insufficient evidence to support the trial court's conclusion that the State proved the elements of third degree assault in this case. Their arguments are unpersuasive, and we reject them.

■ We review the sufficiency of the evidence in a criminal case to determine whether, when viewed in the light most favorable to the State, a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt."[2]

Under RCW 9A.36.031:

(1) A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree:

. . . .

(f) With criminal negligence, causes bodily harm accompanied by substantial pain that extends for a period sufficient to cause considerable suffering . . . .

Jack and Lewis argue that there was insufficient evidence

---

[1]RCW 13.40.180(1).

[2]*State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

in the record that Leahy suffered substantial pain extending for a period sufficient to cause considerable suffering. They contend that because the statute requires "bodily harm," which is defined in the criminal code to include physical pain,[3] we should construe "substantial pain" as something more than mere physical pain of the sort that typically accompanies an assault.

■ This argument ignores the record. While Jack and Lewis suggest that Leahy's headaches and pain were no greater than would be suffered in a "typical assault," the record shows that the victim had a headache that lasted for two weeks and "felt like [her] brain was going to explode." That headache, together with the extensive bruising and black eye, constituted sufficient evidence to meet the requirement for third degree assault.

## II. Sufficiency of Factual Findings

■ Robertson, Jack, and Lewis contend that the trial court failed to make adequate findings of fact to support its conclusion that they each committed malicious harassment. The State responds that we may consider findings of fact that the trial court included within its conclusions of law. It argues that, taken together, the findings of fact and conclusions of law support the court's conclusion of guilt.

RCW 9A.36.080(1) provides, in relevant part, that:

A person is guilty of malicious harassment if he or she maliciously and intentionally commits one of the following acts *because of his or her perception of the victim's race,* color, religion, ancestry, national origin, gender, sexual orientation, or mental, physical, or sensory handicap:

(a) Causes physical injury to the victim or another person . . . .[4]

Pursuant to JuCR 7.11(d), the trial court entered the fol-

---

[3]RCW 9A.04.110(4)(a) defines "bodily harm" as "physical pain or injury, illness, or an impairment of physical condition[.]"

[4](Emphasis added.)

lowing written findings of fact for each of the three appellants in these cases.[5]

2. . . . Tiana Leahy, who is white, was walking towards a bus stop on her way home from school.

3. That as [Leahy] approached the bus stop, several comments were made towards her by a group of four African-American females.

4. That [T.F.], who was already sitting at the bus stop, heard one of them say "Here comes that white bitch".

5. That Tiana Leahy also heard the comment referring to her as a "white bitch".

. . . .

7. That the four females were Beatrice Simpson, Sarah Lewis, Dwayle Jack, and Bobbie Robertson . . . .

The trial court entered the following mixed finding of fact and conclusion of law:[6]

That on November 21, 1995, [each appellant] committed the crime of Malicious Harassment when together with others she maliciously and intentionally caused physical injury to Tiana Leahy *because of her perception of the race and color of Tiana Leahy.*[7]

Thus, the court made an express, ultimate finding that Robertson, Lewis, and Jack had each caused physical injury to Leahy because of their perceptions of Leahy's race. This factual finding is sufficient to support the conclusion that each was guilty of malicious harassment.

---

[5]JuCR 7.11(d) provides that: "The court shall enter written findings and conclusions in a case that is appealed. The findings shall state the ultimate facts as to each element of the crime and the evidence upon which the court relied in reaching its decision."

[6]*See Valentine v. Department of Licensing,* 77 Wn. App. 838, 846, 894 P.2d 1352 (court reviews finding of fact that is incorrectly denominated as a conclusion of law as a finding, for substantial evidence), *review denied,* 127 Wn.2d 1020 (1995).

[7](Emphasis added.)

██ Robertson contends that because the court did not find that a particular principal committed malicious harassment, the court erred by finding Robertson guilty as an accomplice. This argument is not persuasive. Where written findings of fact are incomplete, we may rely on the trial court's oral findings for purposes of review.[8] While the trial court did not make a specific written finding regarding accomplice liability, it stated in its oral decision that:

> If BJ is the only person in the crowd who made any comment to the victim regarding her race, her hair, or anything else pertaining to her ethnic or racial origin, these individuals acted as accomplices or principals in the assault itself. They also sustained the mental state of the prime actor, BJ.
>
> Whether they hurled a racial slur themselves, which the victim says they did, *or whether they simply assisted BJ after she did so, which the Court finds she did*, they still bear the same responsibility.[9]

Thus, the court did find that BJ hurled racial slurs and acted as a principal. Likewise, the court found that each of the appellants acted as an accomplice.

Jack and Lewis contend that the court failed to make any findings regarding complicity. We disagree.

Under RCW 9A.08.020(3), a person is an accomplice in the commission of a crime if: "(a) [w]ith knowledge that it will promote or facilitate the commission of the crime, he . . . (ii) aids or agrees to aid such other person in planning or committing it[.]"

We quoted above the trial court's oral findings that the three appellants aided and assisted BJ as she hurled racial slurs and punched Leahy. Accomplice liability also requires a showing that the alleged accomplice acted with

---

[8]*State v. Bynum*, 76 Wn. App. 262, 884 P.2d 10 (1994), *review denied*, 126 Wn.2d 1012 (1995).

[9](Emphasis added.)

general knowledge of the principal's substantive crime.[10] The substance of the court's statements also indicates that the court found that Jack, Lewis, and Robertson acted knowingly, having shared "the mental state of the prime actor, BJ." We conclude that the trial court's statements in its oral decision, in combination with its written findings and conclusions, are sufficient to establish accomplice liability.

Jack and Lewis further argue that to support its conclusions that both girls were guilty of malicious harassment, the trial court was required to find that they either knew of or shared BJ's mental state with respect to victim selection.

Lewis further contends that malicious harassment is essentially a sentence-enhancing provision and does not constitute a separate substantive crime. She argues that the court could not hold her liable for malicious harassment unless it found that she shared BJ's mental state.

In *State v. Silva-Baltazar*[11] and *State v. McKim*,[12] our Supreme Court noted that some penalty enhancement statutes may not be applicable to accomplices absent findings that the accomplices committed each element of the enhancement themselves. In *Silva-Baltazar*, the court held that accomplices to a drug sale who were themselves present within 1,000 feet of a school zone were subject to the school zone sentence enhancement.[13] The court based its conclusion on the fact that the school zone enhancement applies even where the principal did not know she was in

---

[10]*State v. Rice*, 102 Wn.2d 120, 125, 683 P.2d 199 (1984); *State v. Luna*, 71 Wn. App. 755, 760, 862 P.2d 620 (1993).

[11]125 Wn.2d 472, 886 P.2d 138 (1994).

[12]98 Wn.2d 111, 653 P.2d 1040 (1982). The deadly weapon enhancement statute the court interpreted in this case was later amended, effectively overruling the case. *See State v. Bilal*, 54 Wn. App. 778, 776 P.2d 153, *review denied*, 113 Wn.2d 1020 (1989).

[13]125 Wn.2d at 483.

a school zone.[14] The court expressly reserved the question of whether the enhancement should apply to an accomplice who was not in the school zone.[15] In *McKim*, the court held that the deadly weapon enhancement for robbery was applicable to an accomplice only where the accomplice knew that the principal was armed.

■ Here, Lewis contends that the malicious harassment statute is a sentence enhancement and that it does not impose strict liability on an accomplice for the actions of the principal. In *State v. Worl*,[16] this court held that malicious harassment is a substantive crime, not an enhancement. Lewis disputes the correctness of that holding. But applying our Supreme Court's framework for determining whether a criminal statute sets forth a criminal offense or a penalty enhancement,[17] we adhere to *Worl's* characterization of malicious harassment as a substantive crime. First, malicious harassment has a presumptive sentence.[18] Second, the language used in the malicious harassment statutes themselves contemplates the creation of a substantive crime rather than a penalty enhancement.[19] Finally, the Supreme Court's reference in *State v. Talley*[20] to the malicious harassment statute as providing for an enhancement was in the context of a First Amendment challenge. There, the issue was whether the statute punishes conduct or protected speech.[21] The court's reference to an enhancement there is not determinative in this

---

[14]*Silva-Baltazar*, 125 Wn.2d at 481-82.

[15]*Silva-Baltazar*, 125 Wn.2d at 480.

[16]74 Wn. App. 605, 875 P.2d 659 (1994), *rev'd on other grounds*, 129 Wn.2d 416, 918 P.2d 905 (1996).

[17]*Silva-Baltazar*, 125 Wn.2d at 478.

[18]RCW 9.94A.320.

[19]RCW 9A.36.078; RCW 9A.36.080.

[20]122 Wn.2d 192, 858 P.2d 217 (1993).

[21]122 Wn.2d at 199.

prosecution for malicious harassment. The reasoning of *Worl* controls.[22]

■ Jack argues that even if the malicious harassment statute provides for a substantive crime, we should require a showing that she shared BJ's mental state. Generally, the State is not required to show that the alleged accomplice shared the principal's mental state.[23] Jack urges us to create an exception from this rule for cases involving malicious harassment.

■■ To support this proposition, Jack first contends that allowing courts to impute a principal's mental state would threaten the tight nexus between speech and conduct required to avoid violation of the First Amendment. Her argument is not persuasive. The First Amendment, as the Supreme Court stated in *Talley*, prohibits the regulation of speech based on its content.[24] But states may prohibit criminal conduct toward victims selected on discriminatory bases.[25] Holding accomplices liable for participating in crimes where the victim was selected because of her membership in a protected class would discourage only criminal conduct, not protected speech.

In addition, we reject Jack's argument that the malicious harassment statute is distinguishable from the deadly weapons provision discussed in *State v. Davis*.[26] The court in *Davis* held that an accomplice is liable for first degree robbery even where that person does not know that the principal is armed with a deadly weapon. Jack argues that the *Davis* rule should not be applied here

---

[22]74 Wn. App. at 613-14.

[23]*See State v. Galisia*, 63 Wn. App. 833, 840, 822 P.2d 303, ("Accomplice liability in Washington is premised on the notion that a defendant need not participate in each element of the crime, nor need he share the same mental state that is required of the principal.") *review denied*, 119 Wn.2d 1003 (1992).

[24]*Talley*, 122 Wn.2d at 200 (citing *In re Welfare of R.A.V.*, 505 U.S. 377, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992)).

[25]*See Talley*, 122 Wn.2d at 201-02.

[26]101 Wn.2d 654, 682 P.2d 883 (1984).

because there is no policy basis for holding accomplices to malicious harassment strictly liable. But Jack is mistaken.

First, the court in *Davis* based its decision in part on the distinction between substantive crimes and enhancement statutes.[27] The court reaffirmed its earlier holding that as to substantive crimes, "an accomplice, having agreed to participate in a criminal act, runs the risk of having the primary actor exceed the scope of the preplanned illegality."[28] As we have noted above, malicious harassment is a substantive crime. Second, holding accomplices strictly liable for malicious harassment furthers the legislative intent behind the malicious harassment statute: to prevent crimes and threats based on race and similar characteristics.[29]

The trial court's findings, in combination with its oral decision, were adequate to support the adjudications of guilt for malicious harassment.

## III. Antimerger

Jack argues that the trial court violated RCW 13.40.180(1) by imposing separate sentences for assault and malicious harassment. That statute provides:

> Where the offenses were committed through a single act or omission, omission, [sic] or through an act or omission which in itself constituted one of the offenses and also was an element of the other, the aggregate of all the terms shall not exceed one hundred fifty percent of the term imposed for the most serious offense[.]

Jack relies on *State v. Worl*[30] for the proposition that, for sentencing purposes, a malicious harassment offense based on the infliction of the same physical injury that consti-

---

[27]101 Wn.2d at 658.

[28]101 Wn.2d at 658.

[29]RCW 9A.36.078.

[30]129 Wn.2d at 426-28.

tutes a basis for another substantive offense constitutes the same criminal conduct. On this basis, she claims that the offenses of malicious harassment and assault in this case constitute a "single act" within the meaning of the statute.

As the State correctly points out, the malicious harassment statute contains an antimerger provision.[31] It states that "[e]very person who commits another crime during the commission of a crime under this section may be *punished* and prosecuted for the other crime separately."[32] The *Worl* opinion does not address this provision.

In *State v. Lessley*,[33] our Supreme Court held that the substantively identical language in the burglary antimerger statute gives courts discretion to punish for burglary, "even where it and an additional crime encompass the same criminal conduct."[34] In reaching this conclusion, the court applied a principle of statutory construction commonly applied when statutes appear to be in conflict. Citing the Court of Appeals decision under review in *Lessley*, the court stated that:

> "When two statutes appear to conflict, every effort should be made to harmonize their respective provisions. Here, that is easily done by recognizing that application of the burglary antimerger statute is discretionary with the sentencing judge and permits punishment for burglary and other crimes simultaneously committed. This result accords with the well-established rules that the more specific statute controls over a conflicting, more general statute, and that the Legislature is presumed to be familiar with its prior legislation. In this case, then, the antimerger statute controls over the general language as to 'same criminal conduct' when the sentencing

---

[31]RCW 9A.36.080(5).

[32](Emphasis added.)

[33]118 Wn.2d 773, 781, 827 P.2d 996 (1992).

[34]The burglary antimerger statute, RCW 9A.52.050, states that "[e]very person who, in the commission of a burglary shall commit any other crime, may be punished therefor as well as for the burglary, and may be prosecuted for each crime separately."

judge imposes punishment pursuant to RCW 9A.52.050. Repeals by implication are not favored. If repeal is appropriate, it should be done by the Legislature, not by the courts."[35]

The same principle applies here. RCW 13.40.180(1), the more general statute, sets forth the "one hundred fifty percent" rule. But RCW 9A.36.080, the malicious harassment statute, contains a specific provision that permits the court to exercise discretion to punish harassment separately from other substantive crimes that otherwise would be considered the same criminal conduct for sentencing purposes. If the Legislature intended that the antimerger provisions of the harassment statute not apply to dispositions in juvenile court, it could have said so. It did not, and we decline the invitation to rewrite the statute

We affirm the adjudications and dispositions.

KENNEDY, A.C.J., and AGID, J., concur.

Review denied at 135 Wn.2d 1004 (1998).

---

[35]118 Wn.2d at 781-82 (quoting *State v. Lessley*, 59 Wn. App. 461, 464-65, 798 P.2d 302 (1990)).