2014 NOV 10 AM 8:22


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71141-5-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| TYLISHA LAKISHIA BROWN, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: November 10, 2014 |
| | ) | |

COX, J. — Tylisha Brown appeals the juvenile court's adjudication and disposition on two counts of fourth degree assault. She claims that the State failed to present sufficient evidence to support her convictions. Alternatively, Brown claims the admission of improper character evidence requires a new trial. Because the State presented sufficient evidence to convict Brown as a principal or an accomplice and because Brown fails to show that the court abused its discretion in admitting evidence, we affirm.

On the afternoon of October 1, 2012, Brown approached M.D. and her friend S.P. outside the South Park Community Center. Brown, who was 14 years old, said she was angry at them for showing some people her house. She told M.D. and S.P., who were both 13 years old, that they were too young for her to fight, but she would have someone else fight them. Later, as M.D. and S.P. walked away from the community center, Brown and her friends stopped them. Brown's friend, A.W., told M.D. and S.P. that she and Brown's sister, T.D.,

wanted to fight them. The four girls lined up on the grass, M.D. and S.P. facing A.W. and T.D. Brown stood to the side, calling out to the girls and video-recording events on a phone. A.W. and T.D. then attacked M.D. and S.P., hitting and punching them.

The State charged Brown with two counts of fourth degree assault, committed "together with others." At the fact-finding hearing, M.D. testified that Brown pushed her and S.P. so they would fight and that A.W. grabbed her hair and punched her. She also testified that she did not want to fight and she never had any problem with A.W. or T.D. M.D. also identified herself and the three other girls shown in the video recording of the fight.

Roxana Amaral, an administrator from Denny Middle School, testified that she found the video of the fight posted on Facebook. Amaral identified the girls on the video. She also testified that she knew Brown from school and could recognize her voice based on having at least 30 conversations with her in the past, from 30 seconds to an hour in length.

The video begins with A.W. and T.D. facing M.D. and S.P., and a voice, identified as Brown's by Amaral, saying, "Three, two, go! Ding!" Then Brown says, "Hold on, hold on, hold on, hold on, don't fight!" The video shows some shoes and the ground as Brown shouts to someone, "Come here!" and "Record this!" After several seconds, the picture again focuses on the four girls, a few different voices can be heard, and then A.W. and T.D. charge forward and begin grabbing and hitting M.D. and S.P.

After closing argument, the judge reviewed the video in chambers before returning a verdict in open court on the record. The judge referred to the point in the video where the ground is pictured, stating, "[B]efore the picture disappears, [Brown] says: Hold on, Hold on. Runs over, tells someone –gets someone to come and record it and then comes back and says: Okay, fight. She's commanding now the behavior at that point in time."[1]

The court found Brown guilty of two counts of assault as charged and entered a disposition order. Following filing of Brown's notice of appeal, the court entered its written findings of fact and conclusions of law.

## SUFFICIENCY OF THE EVIDENCE

Brown contends the State failed to present sufficient evidence to support a conclusion that she acted either as the principal or an accomplice in the assaults against M.D. and S.P. Brown challenges portions of the court's findings of fact as well as its conclusions of law.

At a fact-finding hearing in juvenile court, the trial court is required to "state its findings of fact and enter its decision on the record," including the "evidence relied upon by the court in reaching its decisions."[2] We review challenged findings of fact for substantial evidence.[3] This court may look to the trial court's oral findings to aid its review if the written findings are incomplete.[4]

---

[1] Report of Proceedings (October 21, 2013) at 90.
[2] JuCR 7.11(c).
[3] State v. B.J.S., 140 Wn. App. 91, 97, 169 P.3d 34 (2007).
[4] State v. Robertson, 88 Wn. App. 836, 843, 947 P.2d 765 (1997).

3

We review de novo the trial court's conclusions of law to determine if they are supported by the findings of fact.[5]

Brown challenges portions of the following findings of fact:

3. The respondent was upset with [M.D.] and [S.P.] because three weeks prior they told some girls where the respondent lived. The respondent stated it was disrespectful to show people where she lives.
4. The respondent was angry and told [M.D.] and [S.P.] that she wanted to fight them but she was too old. The respondent ordered [M.D.] and [S.P.] to fight [A.W.] and [T.D.]. [T.D.] is the respondent's sister.
5. [M.D.] had not had any problems in the past with the respondent ... and did not want to fight. [M.D. and S.P.] left the community center and walked outside. The respondent and other[s] were at the edge of the community center property. They were approached by the respondent. The respondent told [M.D.] and [S.P.] to fight [A.W.] and [T.D.]. [M.D.] and [S.P.] refused to fight [A.W.] and [T.D.]. The respondent pushed [M.D.] and [S.P.] toward [A.W.] and [T.D.]. [M.D.] and [S.P.] still refused to fight.
...
10. The respondent encouraged [T.D.] and [A.W.] to fight [M.D.] [and] [S.P].[6]

In particular, Brown claims no evidence supports the three week time-frame or the reference to disrespect in finding 3. As to finding 4, Brown argues there was no evidence that (1) S.P. was present when Brown spoke to M.D.; (2) Brown said she was too old to fight; or (3) Brown ordered anyone to fight. Brown also claims no evidence supported finding 5 as to (1) Brown telling anyone to fight; (2) M.D. refusing to fight; or (3) Brown pushing anyone toward anyone else. Finally, Brown argues finding 10 is not supported by the record and is actually a conclusion of law mislabeled as a finding of fact.

The State properly concedes that the record does not support certain portions of the challenged findings but contends that substantial evidence supports the remaining facts critical to the court's conclusions. We agree.

[5] Bingham v. Lechner, 111 Wn. App. 118, 127, 45 P.3d 562 (2002).
[6] Clerk's Papers at 31-32.

As to finding 3, M.D. testified only that Brown "was angry" at M.D. and S.P. because they "showed some people her house." We accept the State's concession as to this finding. We also accept its concession regarding finding 4 that M.D. did not claim that S.P. was present for her conversation with Brown outside the community center and that no evidence suggests that Brown ordered the girls to fight at that time. But the rest of finding 4 is supported by M.D.'s testimony that Brown "was angry" and said "that she wasn't going to fight us because we were too young."

We reject Brown's challenge and the State's concession as to finding 5. The trial court considered both witness testimony and the video. Although M.D. offered conflicting and vague details of how and when Brown pushed her and S.P., we defer to the trial court's resolution of conflicts in the testimony, and determinations regarding credibility of witnesses and the persuasiveness of evidence.[7] Amaral testified that the voice on the video telling the girls to fight was Brown's. Although the video does not show Brown pushing M.D. and S.P., it does show M.D. and S.P. standing with hands or arms folded each time Brown told them to fight. The combination of the testimony and the video support the challenged portions of finding 5.

We also disagree with Brown's claim that finding 10 is solely a legal conclusion as to Brown's guilt as an accomplice. The question whether Brown's specific actions and behavior during the incident constitute mere presence or some degree of participation requires a factual determination. In finding 10, the trial court determined that Brown "encouraged" the girls to fight. This factual

---

[7] State v. Fiser, 99 Wn. App. 714, 719, 995 P.2d 107 (2000).

determination is supported by M.D.'s testimony that Brown "tried to like push us so like we could fight," Amaral's testimony identifying Brown's voice on the video telling the girls to fight, and the video itself.

Challenging the trial court's conclusion regarding her guilt as a principal, Brown claims there was no evidence that she pushed M.D. in a harmful or offensive manner or even touched S.P. As to accomplice liability, she claims there was no evidence that she (1) influenced the actions of A.W. and T.D.; (2) was ready to assist in the crime; or (3) participated in the crime in any way other than being present. We disagree with these contentions.

Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could find beyond a reasonable doubt the essential elements of the crime.[8] We draw all reasonable inferences in the State's favor, and interpret the evidence most strongly against the defendant.[9] Circumstantial evidence and direct evidence are equally reliable.[10] "In determining whether the requisite quantum of proof exists, the reviewing court need not be convinced of the defendant's guilt beyond a reasonable doubt, but only that substantial evidence supports the State's case."[11]

An "assault" is defined as an intentional touching or striking of another that is harmful or offensive.[12] A touching or striking is offensive if it "would offend an

---

[8] State v. Green, 94 Wn.2d 216, 221–22, 616 P.2d 628 (1980).
[9] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).
[10] State v. Liden, 138 Wn. App. 110, 117, 156 P.3d 259 (2007).
[11] State v. Jones, 93 Wn. App. 166, 176, 968 P.2d 888 (1998).
[12] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 35.50, at 547 (3d ed. 2008) (WPIC); see State v. Stevens, 158 Wn.2d 304, 314, 143 P.3d 817 (2006).

ordinary person who is not unduly sensitive."[13] A person acts as an accomplice if, "[w]ith knowledge that it will promote or facilitate the commission of the crime, he or she: (i) [s]olicits, commands, encourages, or requests such other person to commit it; or (ii) [a]ids or agrees to aid such other person in planning or committing it . . . ."[14] A defendant need not participate in each element of the crime in order to be convicted as an accomplice.[15] Instead, an accomplice need have only general knowledge that he is encouraging or assisting in the criminal act.[16] A person who is an accomplice in the commission of a crime is guilty of that crime to the same extent as the principal.[17]

Based on M.D.'s testimony that Brown pushed her and S.P. so they would fight, a rational trier of fact could find that Brown physically pushed both M.D. and S.P. toward A.W. and T.D. either before she began recording or when the camera was pointed to the ground. M.D. testified that she did not want to fight. Viewing the evidence in the light most favorable to the State, a rational trier of fact could find that Brown's physical contact with M.D. and S.P. in these circumstances would offend an ordinary person who was not unduly sensitive.

Moreover, as the court stated, the video demonstrated that Brown repeatedly told A.W. and T.D. to fight and they eventually attacked M.D. and S.P. as instructed by Brown. Unchallenged findings of fact 6 and 9 establishing these points are verities on appeal.[18] Based on these findings, Brown's actions can be

---

[13] WPIC 35.50.

[14] RCW 9A.08.020(3).

[15] State v. Galisia, 63 Wn. App. 833, 840, 822 P.2d 303 (1992), abrogated on other grounds by State v. Trujillo, 75 Wn. App. 913, 883 P.2d 329 (1994).

[16] State v. Ferreira, 69 Wn. App. 465, 472, 850 P.2d 541 (1993).

[17] RCW 9A.08.020.

[18] State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

properly viewed as participation, rather than mere presence, supporting the trial court's conclusion regarding Brown's guilt as an accomplice.

## ADMISSION OF EVIDENCE

In the alternative, Brown challenges the admission of Amaral's testimony regarding her job duties as the administrator of discipline at Brown's school, that she interacted with Brown at school on a daily basis, and that she had regular contact with Brown's parents. Brown argues that admission of such testimony raised an improper inference that Amaral interacted with Brown on a daily basis because Brown was a disciplinary problem, in violation of the rules of evidence. We hold that the court did not abuse its discretion in admitting the evidence.

We review evidentiary rulings for abuse of discretion.[19] Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[20] Evidence that is not relevant is not admissible.[21] Under ER 403, the court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.[22] ER 404(b) prohibits the admission of propensity evidence if offered to prove action in conformity therewith, but permits the admission of other crimes, wrongs, and acts for other purposes.[23]

---

[19] State v. Matthews, 75 Wn. App. 278, 283, 877 P.2d 252 (1994).
[20] ER 401.
[21] ER 402.
[22] ER 403.
[23] ER 404(b).

During the State's direct examination of Amaral, the following exchange

occurred:

> Q. And how do you recognize Tylisha Brown?
> A. Tylisha was a student at Denny International Middle School her eighth-grade year. I was her house administrator at the time.
> Q. What's a house administrator?
> A. A house administrator has many roles, but primarily at Denny International Middle School, the house administrator does all of student discipline. In that year Tylisha was an eighth-grader. I was the eighth-grade house administrator.
> Q. And how often did you come into contact with Ms. Brown?
> A. Tylisha was at Denny for a short amount of time, but during that time we had --
> Q. I'll stop you. If there's any specific incidents, I don't want to know about that. I just want to know if you had communications with her.
> A. Uh-huh. During the time that she was at Denny I did see her on a daily basis, speak to her, her parents on a daily -- not daily, but at least her on a daily basis.[24]

Defense counsel objected, arguing that Amaral's reference to her

disciplinary duties and her contact with Brown and her parents violated ER

404(b) by raising the inference that Brown's misconduct led to the contacts. The

prosecutor argued the testimony was elicited to show Amaral's familiarity with

Brown's voice not any misconduct on Brown's part. Then defense counsel

argued that Amaral's job title and duties and her contacts with Brown's parents

were immaterial and demonstrated the State's intentional violation of the trial

court's ruling in limine excluding ER 404(b) evidence. Recognizing the

impropriety of introducing Amaral's disciplinarian role as "a back-door way" to

show propensity, the trial court overruled the objection because Amaral's

testimony regarding her daily contacts with Brown was relevant to establish a

foundation for her claimed ability to identify Brown's voice.

---

[24] Report of Proceedings (Oct. 21, 2013) at 62-63.

Contrary to Brown's characterization of the testimony, Amaral did not actually testify as to the nature or content of her daily contacts with Brown and did not attribute any prior wrongs or acts to Brown. The prosecutor offered the testimony to establish the frequency of Amaral's contacts with Brown allowing her to recognize Brown's voice. And as the State points out, when acting as the finder of fact, we presume the trial court disregards inadmissible inferences, thereby avoiding any prejudice to the defendant.[25] Brown fails to demonstrate any abuse of discretion in the trial court's admission of Amaral's testimony.

We affirm the adjudication and disposition.

_Cox, J._

WE CONCUR:

_Leach, J._                              _Dwyer, J._

---

[25] See State v. Melton, 63 Wn. App. 63, 68, 817 P.2d 413 (1991).