IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32718-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ADRIAN ANGUIANO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Adrian Anguiano, a juvenile, was found guilty of attempted indecent liberties after he told a fellow resident at the Twin Rivers juvenile detention facility to perform oral sex on him while Mr. Anguiano's roommate held the victim in a chokehold against a wall. Mr. Anguiano challenges the sufficiency of the evidence to show that (1) he and his roommate worked in concert in the commission of the crime and (2) as the juvenile court implicitly found, Mr. Anguiano was attempting to have sexual contact with the victim. He also challenges three of the juvenile court's conclusions of law as erroneous, predicated entirely on his challenges to the two findings.

Because substantial evidence supports the challenged findings, we affirm.

FACTS AND PROCEDURAL BACKGROUND

Fourteen-year-old Adrian Anguiano was a resident at Twin Rivers Community Facility, an all-male, minimum security facility for juvenile offenders. On March 28,

2014, he was eating lunch with D.T., another Twin Rivers resident, who mentioned that he was going to stop at the front desk to get some lotion. Mr. Anguiano responded that he had some in his room and would "hook [him] up." Report of Proceedings (RP) at 22. D.T. grabbed some small cups from the salad bar and the two boys headed for Mr. Anguiano's room.

After they entered his room, Mr. Anguiano pulled out his penis, held it in his hand, and said to D.T., "[C]ome on man just suck me up," and "it [i]sn't gay or nothing." RP at 31, 32. D.T. responded, "[N]o dude I ain't like that." RP at 32. Mr. Anguiano's roommate, George Thacker, came into the room, apparently shortly after Mr. Anguiano and D.T. entered, and was present as Mr. Anguiano continued to tell D.T. to "just do it." *Id.* Mr. Thacker grabbed D.T. from behind and wrestled him to the ground, placing him in a chokehold against the wall. D.T. "had one arm free" and "was swinging with it to keep [Mr. Anguiano] away." RP at 33. He estimated Mr. Anguiano was roughly five feet away from him at this point.

William Chapin, a residential counselor at the facility, was doing a population count after lunch that day and went looking for Mr. Thacker, who was assigned to dish detail. Upon arriving at Mr. Thacker's room, he saw Mr. Anguiano through the window; Mr. Anguiano's shorts were pulled down and he was holding his penis in his hand, "kind of dancing around." RP at 8. As soon as Mr. Anguiano saw Mr. Chapin, he pulled up his pants and his face reddened. Mr. Chapin opened the door, entered the room, and

2

immediately saw that Mr. Thacker had D.T. in a hold against the wall and that D.T. was struggling to get away. Mr. Chapin estimated that Mr. Anguiano was three to four feet away from the two other boys.

Mr. Chapin described both Mr. Anguiano and Mr. Thacker as laughing until they realized they had been caught. He described D.T. as also "kind of appear[ing] to be laughing," but was doing so awkwardly, as if he "didn't want to be there." RP at 9.

Mr. Anguiano was charged with attempted indecent liberties by forcible compulsion in violation of RCW 9A.44.100(1)(a) and RCW 9A.28.020. The information charged him with "knowingly attempt[ing] to cause [D.T.], a person who was not his/her spouse, to have sexual contact with him/her by forcible compulsion, to-wit: tried to touched [sic] him with his penis while he was being held against his will." Clerk's Papers (CP) at 1.

The matter proceeded to an adjudicatory hearing before the Benton County Juvenile Court. Following presentation of the evidence, the defense argued that the State failed to prove Mr. Anguiano had anything to do with the force used by Mr. Thacker because there was no evidence Mr. Anguiano asked Mr. Thacker to use force or that they had any sort of plan or agreement. Also, because Mr. Anguiano was several feet away from D.T., defense counsel argued that the State could not establish that there was "forced sexual touching." RP at 43.

3

The trial court rejected the defense arguments and found Mr. Anguiano guilty. It orally announced its decision at the conclusion of the trial and later entered written findings and conclusions. Mr. Anguiano appeals.

## ANALYSIS

Mr. Anguiano's opening brief mentions the requirement of the Juvenile Court Rules that when a juvenile case is appealed, the juvenile court must enter written findings and conclusions that "state the ultimate facts as to each element of the crime and the evidence upon which the court relied in reaching its decision." JuCR 7.11(d). The argument portion of his brief implicitly complains that the court's findings do not meet this standard, repeatedly addressing matters that the court "did not find" or as to which it "made no findings." *E.g.*, Br. of Appellant at 7, 9, and 10. Yet Mr. Anguiano has not assigned error to the trial court's failure to make sufficient findings. *See* RAP 10.3(a)(4) (each error claimed by an appellant must be identified under an appropriate heading by a separate concise statement of the alleged error).

If he had assigned error to the failure to make sufficient findings, we would first consider the trial court's oral findings for purposes of review. *State v. Robertson*, 88 Wn. App. 836, 843, 947 P.2d 765 (1997). If review of both the written and oral findings fell short of the rule's requirements, we would remand for sufficient findings as long as there was evidence in the record from which a rational trier of fact could find the elements of the charged offense. *State v. Alvarez*, 128 Wn.2d 1, 19, 904 P.2d 754 (1995).

4

Mr. Anguiano's required assignments of error are to only two findings of fact and three conclusions of law. Br. of Appellant at 1, Section "A. ASSIGNMENTS OF ERROR". Given Mr. Anguiano's decision not to assign error to any inadequacy of the court's findings under JuCR 7.11(d), we will not address the Juvenile Court Rule requirements further.

We first separately address Mr. Anguiano's assignments of error to two findings of fact. We then address collectively his assignments of error to the juvenile court's conclusions of law.

> *Assignment of Error No. 1. The court erred in finding: "The respondent and co-respondent, George Thacker, worked in concert in the commission of this crime." CP at 42.*

"Due process requires the State to prove all elements of the crime beyond a reasonable doubt." *State v. Washington*, 135 Wn. App. 42, 48, 143 P.3d 606 (2006). Mr. Anguiano was charged with attempted indecent liberties by forcible compulsion. Although intent is not an element of indecent liberties,[1] crimes of attempt require proof of a specific intent to commit the offense. *See, e.g., State v. Dunbar*, 117 Wn.2d 587, 591, 817 P.2d 1360 (1991) (while defendant may be guilty of murder even without an actual intent to kill, attempt to murder requires specific intent to kill); *State v. Aumick*, 73 Wn.

---

[1] *State v. Price*, 17 Wn. App. 247, 249, 562 P.2d 256 (1977); *State v. Thomas*, 98 Wn. App. 422, 425-26, 989 P.2d 612 (1999) (the necessary culpable mental state for the crime of indecent liberties is knowledge, which "is a less culpable mental state than, and does not necessarily include, intent").

App. 379, 383, 869 P.2d 421 (1994), *aff'd*, 126 Wn.2d 422, 894 P.2d 1325 (1995) ("Unlike the crime of rape, attempted rape requires proof of a specific intent to rape."). "A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(1). Attempt therefore consists of two elements: "(1) intent, and (2) a substantial step." *Aumick*, 126 Wn.2d at 429.

"The intent required is the intent to accomplish the criminal result of the base crime." *State v. Johnson*, 173 Wn.2d 895, 899, 270 P.3d 591 (2012). To determine the required criminal result, the court looks to the definition of the base crime. *Id.* at 899. As relevant here, RCW 9A.44.100(1)(a) provides that a person is guilty of indecent liberties "when he or she knowingly causes another person to have sexual contact with him or her or another . . . [b]y forcible compulsion." Because the requisite criminal result is that sexual contact occur by forcible compulsion, *see State v. Ticeson*, 26 Wn. App. 876, 880, 614 P.2d 245 (1980), the intent required for the crime of attempted indecent liberties is an intent to cause sexual contact by forcible compulsion. "Forcible compulsion" is defined in RCW 9A.44.010(6) to include "physical force which overcomes resistance." "Sexual contact" means "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2).

The elements of a crime can be split between a principal and an accomplice. If one of them commits the necessary physical acts and the other has the necessary mental state, both can be convicted. *State v. Walker*, 182 Wn.2d 463, 483, 341 P.3d 976 (2015); *State v. Haack*, 88 Wn. App. 423, 427-28, 958 P.2d 1001 (1997). The theory of accomplice liability need not be included in the charging document because it is the same as direct liability. *State v. Carothers*, 84 Wn.2d 256, 262, 525 P.2d 731 (1974). As the Supreme Court explained in *Carothers*:

> The legislature has said that anyone who participates in the commission of a crime is guilty of the crime and should be charged as a principal, regardless of the degree or nature of his participation. Whether he holds the gun, holds the victim, keeps a lookout, stands by ready to help the assailant, or aids in some other way, he is a participant. The elements of the crime remain the same.

*Id.* at 264.

An accomplice "need not participate in or have specific knowledge of every element of the crime nor share the same mental state as the principal." *State v. Berube*, 150 Wn.2d 498, 511, 79 P.3d 1144 (2003). A defendant can be charged as a principal and convicted as an accomplice; the jury need not determine the defendant's exact role in the crime. *State v. Baylor*, 17 Wn. App. 616, 618, 565 P.2d 99 (1977). A person is liable as an accomplice if, "[w]ith knowledge that it will promote or facilitate the commission of the crime, he . . . (i) [s]olicits, commands, encourages, or requests such other person to

7

commit it; or (ii) [a]ids or agrees to aid such other person in planning or committing it."

RCW 9A.08.020(3)(a).

The first finding of the juvenile court challenged by Mr. Anguiano is its finding

that he and Mr. Thacker "worked in concert in the commission of this crime." CP at 42.

Where a defendant challenges the sufficiency of the evidence, we must "view the

evidence in the light most favorable to the State and determine whether any rational trier

of fact could have found the elements of the charged crime beyond a reasonable doubt."

*State v. Brown*, 162 Wn.2d 422, 428, 173 P.3d 245 (2007). In evaluating the sufficiency

of the evidence, we "must defer to the trier of fact on issues of conflicting testimony,

credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150

Wn.2d 821, 874-75, 83 P.3d 970 (2004).

"The elements of a crime can be established by both direct and circumstantial

evidence." *State v. Thompson*, 88 Wn.2d 13, 16, 558 P.2d 202 (1977). Circumstantial

evidence is considered just as reliable as direct evidence. *State v. Delmarter*, 94 Wn.2d

634, 638, 618 P.2d 99 (1980).

Mr. Anguiano argues that there was no evidence that Mr. Thacker knew that Mr.

Anguiano was attempting to commit indecent liberties by force. Br. of Appellant at 9.

Yet the evidence established that Mr. Thacker, having witnessed Mr. Anguiano, penis in

hand, asking D.T. to "suck him up," wrestled D.T. to the floor while Mr. Anguiano stood

three to five feet away. It established that Mr. Anguiano continued to face D.T. with his

exposed penis in his hand and was dancing around as D.T. swung his free arm at Mr. Anguiano in an effort to fend him off.

Mr. Anguiano would have us conclude that he and Mr. Thacker were engaged in independent horseplay without any demonstrated knowledge of the other's intent. But the element of intent "may be inferred from all the facts and circumstances surrounding the commission of an act or acts." *State v. Bergeron*, 105 Wn.2d 1, 19, 711 P.2d 1000 (1985); *State v. Abuan*, 161 Wn. App. 135, 155, 257 P.3d 1 (2011) (noting that specific criminal intent may be inferred "from conduct that plainly indicates such intent as a matter of logical probability"). The juvenile court inferred it here, and it was in the best position to weigh credibility and the persuasiveness of D.T.'s and Mr. Chapin's perceptions. Their testimony was substantial evidence that Mr. Thacker's actions both encouraged and aided Mr. Anguiano in attempting to have sexual contact by providing the necessary force. Substantial evidence therefore supported the juvenile court's finding that Mr. Anguiano and Mr. Thacker worked in concert in the commission of the crime.

*Assignment of Error No. 2. The court erred in finding: "[D.T.] used his free hand to prevent the respondent from having sexual contact with him."*
*CP at 43.*

The second factual finding challenged by Mr. Anguiano is the juvenile court's finding that "[D.T.] used his free hand to prevent the respondent from having sexual contact with him." CP at 43. Mr. Anguiano concedes that sufficient evidence supports the finding that D.T. was swinging his arm; what he challenges is the finding that he was

9

doing this to prevent Mr. Anguiano from having sexual contact with him and the implied finding that Mr. Anguiano *did* have the intention of having sexual contact with D.T.

D.T. testified that after being pulled to the ground and held by Mr. Thacker, "I had one arm free and I was swinging with it to keep Adrian away." RP at 33. He testified that Mr. Thacker wrestled him to the ground and held him after Mr. Thacker witnessed Mr. Anguiano with his penis in his hand, asking D.T. to "suck him up." RP at 32. When D.T. was asked how Mr. Anguiano appeared after D.T. had been wrestled to the ground and was in Mr. Thacker's hold, he testified "Well he had his, you know, his penis out and, you know, he kept saying that stuff like oh it ain't gay. I'm up with on you and stuff like that." RP at 33.

Mr. Chapin testified consistently, recounting that he saw D.T. on the ground, in a hold, and "struggling to get away from [Mr. Thacker]," while Mr. Anguiano was three or four feet in front of D.T., penis in hand, "kind of dancing around." RP at 8, 9. Mr. Chapin testified that upon seeing Mr. Chapin, Mr. Anguiano pulled up his pants, blushed, and "looked like he just knew that he just got caught doing something." RP at 9. D.T. testified that following the incident, Mr. Anguiano "told me not to snitch and stuff like that." RP at 34.

This testimony from D.T. and Mr. Chapin is substantial evidence supporting both the juvenile court's finding that D.T. was swinging his arm to prevent Mr. Anguiano

from having sexual contact with him and its implicit finding that Mr. Anguiano *did* have the intention of having sexual contact with D.T.

*Assignments of Error No. 3, 4, and 5. The court erred in concluding:*

*"The court finds beyond a reasonable doubt that the respondent in conjunction with the co-respondent, George Thacker, took a substantial step toward forcing [D.T.] to have sexual contact with the respondent through forcible compulsion." CP at 43;*

*"The state does not have to establish that the respondent alone provided the forcible compulsion." Id.; and*

*Mr. Anguiano was guilty of attempted indecent liberties by forcible compulsion.*

Mr. Anguiano's remaining challenges are to the juvenile court's three conclusions of law: (1) that the State proved beyond a reasonable doubt that he, in conjunction with Mr. Thacker, "took a substantial step toward forcing [D.T.] to have sexual contact with [Mr. Anguiano] through forcible compulsion," (2) that the State does not have to establish that Mr. Anguiano alone provided the forcible compulsion, and (3) that Mr. Anguiano is guilty of the crime of attempted indecent liberties by forcible compulsion. CP at 43.

In reviewing a conclusion of law, we decide whether it is supported by the juvenile court's findings. *State v. B.J.S.*, 140 Wn. App. 91, 97, 169 P.3d 34 (2007). Our review is de novo. *Id.* We treat unchallenged findings of fact, of which there are several

11

No. 32718-3-III
*State v. Anguiano*

in this case, as verities on appeal. *State v. Levy*, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006).

Mr. Anguiano's brief does not provide argument or authority for his challenge to the juvenile court's three legal conclusions. His assignment of error to the conclusions appears to be predicated entirely on his challenge to the underlying factual findings that he intended to have sexual contact with D.T. and acted in concert with Mr. Thacker. He evidently relies on the fact that if the critical findings fail, the conclusions will as well. We have held, however, that the challenged findings were supported by substantial evidence.

Given no other suggestion as to why the conclusions of law are in error, Mr. Anguiano's remaining assignments of error merit no further discussion. RAP 10.3(a)(6).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Brown, J.

_____
Fearing, J.

12